UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
SECURITIES AND EXCHANGE            :
COMMISSION,
                                   :     No.: 1:22-CV-09803
                                   :     Hon. Jed S. Rakoff
                Plaintiff,
                                   :
    -against-
                                   :
GEL DIRECT TRUST
GEL DIRECT, LLC                    :
JEFFREY K. GALVANI
STUART A. JEFFERY                  :

                Defendants.
-----------------------------------------------------X

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
# OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

# TABLE OF CONTENTS

PRELIMINARY REPLY ...................................................................................................................1

ARGUMENT ...................................................................................................................................3

    1.   The SEC's Recitation of Case Law Does Not Overcome the Factual Deficiencies in its Complaint ..................................................................................................................3

    2.   The SEC Complaint Fails to Allege that GEL "Participated" in Securities Transactions .6

    3.   GEL's Fixed Fee-Based Compensation is Not Sufficiently Dispositive to Allege Broker Activity Absent Other Factors .................................................................................7

    4.   The SEC Has Failed to Plausibly Allege Liability Under Section 20(a) ..........................9

CONCLUSION ..............................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007) ...............................9

*Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998) ...........................................................9

*Cannavest Corp. Sec. Litig.*, 307 F. Supp. 3d 222, 254, 256 (S.D.N.Y. 2018) .............................9

*In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 660 n.43 (S.D.N.Y. 2007) ............................10

*Lanza v. Drexel & Co.*, 479 F.2d 1277, 1299 (2d Cir. 1973) ......................................................10

*S.E.C. v. Kramer*, 778 F. Supp. 2d 1320, 1336 (M.D. Fla. 2011) ................................................8

*SEC v. Art Intellect, Inc.*, No. 11 Civ. 357, 2013 WL 840048 (D. Utah Mar. 6, 2013) ............3, 4

*SEC v. Collyard*, 154 F. Supp. 3d 781, 789 (D. Minn 2015) .......................................................8

*SEC v. Global Investment Strategy UK Ltd.,* No. 20 Civ. 10838, 2021 WL 4896127 ..................4

*SEC v. Hansen*, No. 83 Civ. 3692, 1984 WL 2413 (S.D.N.Y. Apr. 6, 1984) ............................3

*SEC v. Investment Strategy UK Ltd.,* No. 20 Civ. 10838, 2021 WL 4896127 (S.D.N.Y. Oct. 9, 2021) (slip copy)..................................................................................................................3

*SEC v. Mapp*, 240 F. Supp. 3d 569, 593 (E.D. Tex. 2017) ......................................................8

*SEC v. Margolin,* 1992 WL 279735 (S.D.N.Y. Sept. 30, 1992)..................................................4

**Statutes**

15 U.S.C. § 78t(a)......................................................................................................................9

15 U.S.C. § 78t(a).....................................................................................................................9

**Treatises**

DAVID A. LIPTON, 15 BROKER- DEALER REGULATION § 1:18 .....................................8

DAVIS POLK, WHAT IS A BROKER DEALER § 2:2.2 (Practising Law Inst. 2010 supp. Apr. 8, 2020) ...................................................................................................................................7

**Court Filings**

Memorandum of Law in Support of GIS's Motion to Dismiss, *SEC v. Global Investment Strategy UK Ltd.,* 20-cv-10838, S.D.N.Y., Doc. No. 19 filed Apr. 2, 2021............................................5

Complaint, *SEC v. Global Investment Strategy UK Ltd.,* S.D.N.Y., 20-cv-10838, Doc. No. 1 filed Dec. 22, 2020 at ¶¶ 19-20 ......................................................................................................5

**Regulations**

Section 15(a) of the Exchange Act................................................................................... 1, 4, 9

Section 20(a) of the Exchange Act.......................................................................................9, 10

Defendants GEL Direct Trust, Gel Direct, LLC, Jeffrey K. Galvani, and Stuart A. Jeffery, (collectively, "Defendants" or "GEL"), by and through undersigned counsel, hereby submit this reply memorandum in further support of the motion to dismiss the Complaint filed by the Securities and Exchange Commission ("Plaintiff" or "SEC"). For the reasons stated below, and as set forth in the initial moving papers (the "Motion"), the Complaint should be dismissed for failure to state claim upon which relief may be granted and the Court should grant the Defendants such other relief as it may deem just and proper.

## **PRELIMINARY REPLY**

Defendants' Motion to Dismiss provides pages of exhaustive and critical dissection of the Complaint's contradictory and outright exculpatory factual allegations. Conversely, the SEC's Memorandum of Law in Opposition (ECF #31, the "Opposition") does little more than recite the vague and improper conclusions of law it bases its Complaint on. The SEC concedes it has not alleged that GEL buys or sells securities. The SEC concedes that GEL does not advertise or negotiate. The closest the SEC comes to actually addressing Defendants' arguments is hidden in a footnote at the bottom of page 4. Of course, the footnote does little by way of challenging Defendants' motion – essentially admitting that the Complaint mischaracterizes GEL's account application to wrongly suggest GEL had trading authority, but that somehow Defendants are the ones who have "missed the point". We contend that is *exactly* the point. Because the Complaint is deficient, void of factual support to form the basis for the SEC's larger conclusion, *i.e.* that GEL "participated" in "key points" of securities transactions – that Complaint cannot plausibly state a claim for relief under the statute.

What is far more striking is the utter lack of other such footnotes dealing with the other inconsistencies raised in the Factual Background Section. Or, instead of footnotes, one would

expect paragraphs upon paragraphs challenging the Factual Background section in the body of the Opposition. Instead, the SEC appears to be hoping that submitting a generic version of an Opposition contending that GEL is just like the businesses at issue in other SEC unregistered broker cases will dupe the Court into thinking that GEL is also required to be registered.

The Motion's threshold argument is that the Complaint fails to plead adequate facts to show GEL was acting as a "broker" at all. The Opposition points to the Hansen factors and waves its hand generally at allegations in the Complaint, implying that the allegations fulfill those factors – but it does not ever specifically address the deficiencies in those allegations discussed in detail in the Motion. The Opposition argues the law, but seem to assume that the underlying allegations are not often contradictory and exculpatory – or minimally insufficient.

Remarkably, GEL is not alleged to have engaged in any of the activities traditionally associated with broker-dealers. The Complaint does not allege that GEL negotiated the terms of any securities transaction, executed any securities transaction, rendered advice about securities, received percentage-based commissions for executing securities transactions, made valuations as to the merits of a given investment, or actively solicited investors. It does not identify which shares are specifically the ones at issue in the "trades" the Opposition discusses. It cannot, of course, because a trade implies both a buy and a sell – and GEL performed neither. Neither the Complaint nor the Opposition provide any indication of where the shares in question were obtained, nor is there any allegation of solicitation. Quite the opposite, actually, as the SEC's Complaint (¶ 20) merely indicates that GEL had "no trouble" developing a customer base – which the SEC admits came mostly through referrals. There is *no* allegation GEL solicited any customers in the Complaint.

Finally, the Opposition at times argues that the Motion "concedes" certain points. To be clear, the Motion simply asks the Judge to consider whether a plausible case has been made by the SEC, taking all of the factual allegations as true. The Complaint attempts to leap from vague and conflicting facts to improper conclusions of law. It lacks the factual predicate to maintain a plausible action under 15(a), and thus 20(c). Accordingly, Defendant Motion should be granted in its entirety.

## ARGUMENT

### 1. The SEC's Recitation of Case Law Does Not Overcome the Factual Deficiencies in its Complaint

The Opposition does nothing to address the many problems that the Motion details with specificity regarding the wording of the individual allegations, relying instead on (presumably) what the SEC considers relevant and persuasive caselaw. Unsurprisingly, of the cases from this Circuit analyzing what constitutes broker activity, none state that acting as a bookkeeper and back-office solution render one a broker, or that such activity amounts to "effecting," "attempting to induce" or "participating in key points" of a securities transaction. These cases instead focus on the activities identified in *SEC v. Hansen*, No. 83 Civ. 3692, 1984 WL 2413 (S.D.N.Y. Apr. 6, 1984), Opposition at p. 8-9. This is notable, because the Opposition mostly concedes that the *Hansen* factors have not been met here. Critically, the Opposition attempts to persuade this Court that GEL is required to be registered as a broker based on a few inapposite cases, as discussed below.

Of these, the closest the Opposition can come to a similar set of facts and circumstances as GEL are *SEC v. Art Intellect, Inc.*, No. 11 Civ. 357, 2013 WL 840048 (D. Utah Mar. 6, 2013)) and *SEC v. Investment Strategy UK Ltd.,* No. 20 Civ. 10838, 2021 WL 4896127 (S.D.N.Y. Oct. 9, 2021) (slip copy). *Art Intellect* is seemingly the case upon which the SEC rests its contention

that participation in the larger order taking or routing process is indicative of broker activity. Yet a deeper dive demonstrates that the case is factually inapposite (among other things, it is an unpublished decision from the District of Utah involving real estate transactions and Ponzi schemes.) *See* Opposition, p. 8-9 (citing *SEC v. Art Intellect, Inc.*, No. 11 Civ. 357, 2013 WL 840048 (D. Utah Mar. 6, 2013)).

The Court in *Art Intellect* found qualifying broker activity for Section 15(a) purposes only because the defendants "***solicited investors to purchase securities in the form of investment contracts***." *Art Intellect*, 2013 WL 840048, at *21 (emphasis added). The issue of solicitation is key in distinguishing both cases from GEL. There simply is no "solicitation" alleged by the SEC. While the Opposition contends it can be found in the Complaint (Opposition at p. 10-11), its lack of a cite to a specific detailed allegation is telling – and thus crucially different than the determinative factor in *Art Intellect*. To attempt to overcome the lack of alleged solicitation in its Complaint, rather than point to the Complaint itself, the Opposition the SEC cites *Margolin,* for the proposition that "advertising for clients is evidence of brokerage activity." *SEC v. Margolin,* 1992 WL 279735 (S.D.N.Y. Sept. 30, 1992). While that may well be the case, the SEC's Complaint does *not* allege that GEL advertised for clients. GEL cannot be required to register as a broker due to the *advertising* prong when GEL is not alleged to have advertised. *Art Intellect* and *Margolin* are inapplicable and unpersuasive.

The SEC's characterization of *SEC v. Global Investment Strategy UK Ltd.,* No. 20 Civ. 10838, 2021 WL 4896127 is myopically self-serving. *Investment Strategy UK Ltd* is primarily a decision as to jurisdiction, service, and venue (the Defendants in *Investment Strategy UK Ltd* are based in the UK). In fact, the Memorandum of Law in Support of Defendant's Motion to Dismiss the Complaint in *Investment Strategy UK Ltd* devoted a grand total of two (2)

4

paragraphs to the argument that Defendant GIS is not a broker-dealer. *See SEC v. Global Investment Strategy UK Ltd.,* 20-cv-10838, S.D.N.Y., Doc. No. 19 filed Apr. 2, 2021 (annexed hereto as **Reply Exhibit A**). Those paragraph's focused on whether GIS' business – of extending margin to its clients with which to purchase securities and then providing clearing services for those securities – constituted broker activity. *Id.* at p. 14. Here there is no allegation that GEL either extends margin or provides clearing services. The SEC's actual allegations in *Investment Strategy UK Ltd* are critically very different than those alleged as against GEL, as set forth below:

> 19. By clearing through GIS, a customer could purchase securities valued at 20 or 30 times the equity in an account, and on one occasion the margin reached 167:1. This degree of margin was significantly more than the backers or traders would have been permitted to trade through U.S.-registered broker-dealers, which are bound by rules limiting the amount a customer can initially borrow from a broker-dealer to purchase an equity security (generally 50% of the current market value of the margin equity security).
>
> 20. ***The increased leverage available through GIS was the reason that the omnibus and sub-account holders chose to clear their trades through GIS, which charged higher per-trade fees than U.S. firms***. The degree of leverage being extended by GIS created risk for the U.S.- based IBDs who could face losses if a sub-account holder abandoned a trade prior to settlement.

*SEC v. Global Investment Strategy UK Ltd.,* S.D.N.Y., 20-cv-10838, Doc. No. 1 filed Dec. 22, 2020 at ¶¶ 19-20, (annexed hereto as **Reply Exhibit B**).

Further, the Complaint in *Investment Strategy UK Ltd* alleges that Defendants advertised for clients on a website, a notable "solicitation" factor.

> 22. GIS's website (www.gisukltd.com/) was accessible in the United States and solicited customers by promoting its "global multi-asset trade execution, clearing, safe custody and stock lending solutions to a combination of financial institutions, fund managers and wealth officers." GIS's website also stated that it provided "dedicated coverage to clients across both UK and US trading hours," and that the Internal Revenue

5

Service listed GIS in its "directory of recognized FATCA Foreign Institutions."

*Id.* ¶ 22.

The contrast to the "solicitation" in the SEC's Complaint allegation against GEL is striking:

> 20. Using their experience and connections in the industry, ***Galvani and Jeffery had no trouble finding customers for their new firm. GEL obtained many of its customers through customer referrals and referrals from other brokerage firms***. As of May 2022, GEL had opened accounts for approximately 60 customers, including customers in multiple U.S. states.

*See* SEC Complaint against the GEL Defendants, Docket No. 1 ¶ 20 (emphasis added).

Thus, as GEL is not alleged to have (1) advertised for customers; (2) extended margin for customers; or (3) provided clearing services for customers, *Investment Strategy UK Ltd* is distinguishable.

**2. The SEC Complaint Fails to Allege that GEL "Participated" in Securities Transactions**

The Opposition admits that GEL is involved neither in the purchase or the sale of any shares, but contends that GEL is sufficiently involved in the transactions that its customers want sold by executing brokers that GEL "participates in such transactions at key points in the chain of distribution." According to the SEC, such participation may include, among other activities:

(i) assisting an issuer to structure prospective securities transactions;
(ii) helping an issuer to identify potential purchasers of securities;
(iii) screening potential participants in a transaction for creditworthiness;
(iv) soliciting securities transactions (including advertising);
(v) negotiating between the issuer and the investor;
(vi) making valuations as to the merits of an investment or giving advice;
(vii) taking, routing or matching orders, or facilitating the execution of a securities transaction;
(viii) handling customer funds or securities; and

(ix) preparing and sending transaction confirmations (other than on behalf of a broker-dealer that executes the trades).

*What is a Broker Dealer* § 2:2.2 Effecting Transactions (Practising Law Inst. 2010 supp. Apr. 8, 2020) https://www.davispolk.com/insights/articles-books/what-broker-dealer-0.

Of these factors, the Complaint fails to allege that GEL does any of the above with the exception of #7 and #8. Further, as set forth above, the Opposition does nothing to defend the inconsistencies of those very allegations. That is, there are only two out of nine factors alleged, and those two are so poorly alleged that they are disputed not by Defendants (although Defendants would do so if the Motion is denied) but by other allegations in the Complaint itself. Further, some acts of participation will not be deemed "effecting" securities transactions. The issue is framed as whether a person conducts activities that go beyond those that are merely clerical or ministerial in nature. If so, they will be required to register with the SEC as a broker-dealer (unless an exemption is available). In determining whether a person has performed functions beyond those that are clerical and ministerial in nature, the same set of relevant factors are considered. Examples of persons providing certain limited clerical or ministerial services to broker-dealers include those that provide payroll processing services, communications services, and confirmation or other back-office services. *Id.* at § 2:2.3, Clerical and Ministerial Activities. GEL falls squarely into this grouping.

### 3. GEL's Fixed Fee-Based Compensation is Not Sufficiently Dispositive to Allege Broker Activity Absent Other Factors

The Opposition argues that GEL is alleged to have received transaction-based compensation. This is accurate to a point. Complaint ¶ 53 ("GEL charged a $30 trade-settlement fee"). With that said, even if GEL brought together parties to a securities transaction and "receive[d] a fee 'in proportion to the amount of the sale'—*i.e.*, a percentage of the total payment

rather than a flat fee—the [SEC] (in a series of 'no-action' letters) 'has been willing to find that there was no need for registration ….'" *S.E.C. v. Kramer*, 778 F. Supp. 2d 1320, 1336 (M.D. Fla. 2011) (citing DAVID A. LIPTON, 15 BROKER- DEALER REGULATION § 1:18). Courts consider receipt of "transaction-based compensation" when a person involved in the sale of a security receives a commission or similar fee in connection with the sale of an issuer's security. *See*, *e.g.*, *SEC v. Collyard*, 154 F. Supp. 3d 781, 789 (D. Minn 2015) (collecting cases), *vacated in part on other grounds*. Though courts have recognized that, in such instances, the receipt of transaction-based compensation is an indicator of brokerage activity (though not necessarily dispositive), the relevant conduct alleged here is sufficiently removed. While the fees charged by GEL were allegedly assessed on a transaction-by-transaction basis, the SEC has not alleged that GEL had any ability to influence the outcome of any transaction, or was the entity buying or selling any security. Thus, GEL was not receiving "commissions" for its role in trading securities – any fees were levied for GEL's back office record keeping services.

Of course, the SEC argues that the Complaint also alleges regular facilitation of trades. And perhaps if the GEL Account forms actually gave GEL control, those two factors would be enough to require registration. That's likely why the Complaint included that misleading allegation. With that said, the Opposition now admits that the Complaint was inaccurate. Whether GEL is "missing the point" or not, these factors lead to a finding that the Complaint does not do enough to allege a registration requirement. See e.g. *SEC v. Mapp*, 240 F. Supp. 3d 569, 593 (E.D. Tex. 2017) (dismissing a case at the Rule 12 stage where the Commission presented no evidence that defendant possessed "authority over the accounts of others"). "[M]erely facilitating securities transactions" alone is, therefore, insufficient to demonstrate that an entity is performing the functions of a broker. *Id.* At 592.

### 4. The SEC Has Failed to Plausibly Allege Liability Under Section 20(a)

The Opposition erroneously contends that the Motion does not challenge control person liability. Indeed it does, primarily by contending that no underlying wrongdoing has been alleged. With that said, Exchange Act section 20(a) imposes liability on any person who "directly or indirectly, controls any person liable" for a violation of the Exchange Act, "unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t(a). To state a claim, the SEC must show "(1) a primary violation by a controlled person; (2) control of the primary violator by the defendant; and (3) that the controlling person was in some meaningful sense a culpable participant in the primary violation." *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998).

Without a primary violation of section 15(a), the control-person liability claims against Mr. Galvani and Mr. Jeffery must be dismissed. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007).

Even if the Complaint had plead a primary violation, the SEC has not adequately alleged Mr. Galvani's or Mr. Jeffery's "culpable" participation. The majority view in this district appears to be that allegations of "culpable" participation are essential to a section 20(a) control-person claim, and that "a plaintiff must plead 'particularized facts of the controlling person's conscious misbehavior or recklessness.'" *In re Cannavest Corp. Sec. Litig.*, 307 F. Supp. 3d 222, 254, 256 (S.D.N.Y. 2018).

That the underlying violation (of Exchange Act section 15(a)) may not itself require scienter does not compel a different result. Section 20(a) imposes no liability where a person "acted in good faith and did not directly or indirectly induce" the violation. 15 U.S.C. § 78t(a).

9

As one district court noted, "[i]t is in part from this language requiring a lack of 'good faith' that the Second Circuit inferred that § 20(a)" imposed liability "only" on "culpable participants." *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 660 n.43 (S.D.N.Y. 2007) (citing *Lanza v. Drexel & Co.*, 479 F.2d 1277, 1299 (2d Cir. 1973)). And since "Section 20(a)'s culpable participation requirement is similar to the scienter requirement of Section 10(b)," *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d at 661, the SEC must plead Mr. Galvani's and Mr. Jeffery's conscious misbehavior or recklessness. The Complaint has alleged no such facts. The control-person claims should be dismissed for this reason.

Finally, it is worth remembering that the Complaint itself admits that both Mr. Galvani and Mr. Jeffery are licensed brokers affiliated with a registered broker-dealer. There are disputed issues of fact concerning the allegation of outside business activity and supervision that the Motion is not permitted to address. But it is fair to note that, where the SEC has admitted that GEL's principals were affiliated with a registered broker-dealer, the SEC has failed to state a claim against them for violating Section 20. They thought (correctly) that they we licensed brokers affiliated with a registered broker dealer. Thus it is impossible for the individual defendants to be deemed culpable participants.

## **CONCLUSION**

Ultimately, the SEC has failed to articulate sufficient factual allegations to state a cause of action against GEL or its principals. For all of the foregoing reasons, and those set forth in the Motion, we respectfully request that this Court grant Defendants' motion to dismiss in its entirety.

Dated: New York, New York
March 3, 2023

        Respectfully submitted,

        PULLP

    By: /s/ Jonathan Uretsky
        Jonathan Uretsky
        Anna Adelstein
        *Attorneys for Defendants*
        111 Broadway, 8th Floor
        New York, New York 10006
        (212) 571-1255
        uretsky@pullp.com
        adelstein@pullp.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 3, 2023, the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                PULLP

      By: /s/ Jonathan Uretsky
           Jonathan Uretsky
           Anna Adelstein
           *Attorneys for Defendants*
           111 Broadway, 8th Floor
           New York, New York 10006
           (212) 571-1255
           uretsky@pullp.com
           adelstein@pullp.com