UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────┐
│ SECURITIES      AND      EXCHANGE     │
│ COMMISISON,                           │
│                                       │
│           Plaintiff,                  │
│                                       │
│      -v-                              │
│                                       │
│ GEL DIRECT TRUST, GEL DIRECT          │
│ LLC,   JEFFREY   K.   GALVANI,        │
│ STUART A. JEFFERY,                    │
│                                       │
│           Defendants.                 │
└─────────────────────────────────────┘
```

22-cv-9803 (JSR)

OPINION AND ORDER

JED S. RAKOFF, U.S.D.J.

Plaintiff the Securities and Exchange Commission ("SEC") alleges that defendants GEL Direct Trust ("GEL"), its managing trustee GEL Direct, LLC ("GEL Trustee"), and its co-owners, Jeffrey K. Galvani and Stuart A. Jeffery (the "Individual Defendants"), sold penny stocks and other securities without being registered as brokers or being associated with a registered broker. On February 3, 2023, defendants moved to dismiss the Complaint for failure to state a claim. See ECF No. 28. After full consideration of both parties' written submissions and oral argument, the Court denied defendants' motion by "bottom-line order" on March 16, 2023. See ECF No. 33. This Opinion reconfirms that order and explains the reasoning behind it.

I.    Plaintiff's Allegations

In early 2019, Mr. Galvani and Mr. Jeffery founded GEL. Compl., ¶ 16. Mr. Galvani and Mr. Jeffery controlled GEL through its managing trustee, GEL Trustee, in which each of them held a 50% ownership stake. Id. at ¶ 18.

Allegedly, GEL facilitated securities transactions in penny stocks. Id. at ¶¶ 19, 21. GEL established custodian accounts, in its own names, at several financial institutions. Id. at ¶ 30. GEL's customers, following GEL's instructions, used electronic transfers to deposit their penny stocks and other securities into the custodian accounts. Id. at ¶ 30. GEL, therefore, had control over the securities contained in these custodian accounts. Id. Separately, GEL established 20 brokerage accounts at various brokerage firms. Id. at ¶ 31. When GEL traded securities in its custodian accounts, it sought to place the trades through its brokerage accounts. Id. at ¶ 32. GEL provided trading instructions on behalf of its customers when it made these trades. Id. at ¶ 33.

When an executing broker sold securities in one of GEL's custodian accounts, the proceeds of the sale would settle in that custodian account. Id. at ¶ 34. GEL facilitated the settlement process by transferring the settled funds from the custodian account to a GEL omnibus account. Id. at ¶ 35. From that omnibus account, GEL then directed portions of the trading proceeds to subaccounts associated with each GEL customer. Id. at ¶¶ 36-37.

From that subaccount, GEL would transfer the proceeds to customer's bank account at the customer's direction. Id. at ¶ 37.

In all, GEL executed more than 19,000 trades of more than 300 billion shares of stock on behalf of approximately 60 customers between June 2019 and May 2022. Id. at ¶ 40. These trades generated more than $1.2 billion of trading proceeds for GEL's customers. Id.

The SEC contends that GEL, in effect, acted as a broker in facilitating these trades. GEL gave specific price and volume directives to executing brokers, and it exercised discretion over many trades that it directed. Id. at ¶ 41. Additionally, GEL received compensation that was based on the volume of transactions that it facilitated. Id. at ¶¶ 50-55. GEL charged $1,100 per deposit of securities in a GEL custodian account, a $30 trade-settlement fee each time it completed a trade on behalf of a customer, and various rush fees to expedite the trading process. Id. at ¶¶ 52-54.

Neither GEL nor GEL Trustee, however, was ever registered as a broker-dealer. Id. at ¶ 22. Nor were Mr. Galvani's or Mr. Jeffery's GEL-related activities conducted in their association with a separate broker-dealer. Id. at ¶ 24. For that reason, the SEC claims that the defendants violated what is herein referred to as the "Registration Requirement" of the Exchange Act, which makes it unlawful for a broker "to make use of ... interstate commerce

to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security unless such broker is registered [with the SEC]." 15 U.S.C. § 78o(a).

## II.  Discussion

Defendants move to dismiss the Complaint on two grounds. First, defendants argue that the Registration Requirement did not apply to them, because GEL did not act as a "broker" as defined by that provision. Second, and in the alternative, the Individual Defendants argue that they satisfied the Registration Requirement through their affiliation with a different registered broker-dealer.

### A. Standard of Review

To survive a motion to dismiss for failure to state a claim, a complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint must offer more than "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007). If the plaintiff has "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Twombly, 550 U.S. at 570.

### B. The Registration Requirement

The Registration Requirement applies to any "broker." A "broker" is broadly defined in the Exchange Act as "any person engaged in the business of effecting transactions in securities for the account of others," 15 U.S.C. § 78c(a)(4)(A). To determine whether a person is considered a broker, courts consider a variety of factors, including whether the person: (1) actively solicits investors; (2) receives transaction-based compensation; (3) handles securities or funds of others in connection with securities transactions; (4) processes documents related to the sale of securities; (5) participates in the order-taking or order-routing process; (6) sells, or previously sold, securities of other issuers; (7) is an employee of the issuer; (8) is involved in negotiations between the issuer and the investor; and/or (9) makes valuations as to the merits of the investment or gives advice. See, e.g., SEC v. Hansen, No. 83 Civ. 3692, 1984 WL 2413, at *10 (S.D.N.Y April 6, 1984) (referring to factors 1, 2, 6, 7, 8, 9); SEC v. Battoo, 158 F. Supp. 3d 676, 695 and n.15 (N.D. Il. 2016) (referring to factors 1, 2, 3, 4, 6, 7, 8, 9); SEC v. Art Intellect, Inc., No. 2:11-CV-357, 2013 WL 840048, at *20 (D. Utah Mar. 6, 2013) (referring to factors 1, 2, 3, 5, and 8).

1. Whether the Registration Requirement Applied to Defendants

Defendants argue that they were not brokers for purposes of the Registration Requirement. They contend that they merely acted as "a glorified admin" -- "an accountant or a bookkeeper." Oral

Argument of Mar. 10, 2023, Tr. 11:24-25. According to them, GEL's primary function was to "keep internal records of the trading its customers directed the licensed executing brokers to do." Def's Mem. of Law in Supp. of Mot. to Dismiss, ECF No. 30, at 11. According to defendants, people who perform such ministerial functions are not "brokers" for purposes of the Registration Requirement.

The Complaint, however, alleges many facts that indicate that the defendants acted as brokers. First, the Complaint alleges that the defendants received transaction-based compensation. GEL charged its customers $30 each time that it completed a trade on their behalf, along with surcharges for expedited handling and for the completion of particularly complex transactions. Compl., ¶¶ 53-54. GEL's own account documents labeled these fees as "commissions," and they amounted to over $12.4 million. Id. at ¶¶ 55-56.

Second, the Complaint alleges that defendants participated in the order-routing process. According to the Complaint, GEL provided trading instructions on behalf of its customers, through which it directed executing brokers to sell securities. Id. at ¶ 33. These instructions included directives on price and volume. For example, on July 2, 2019, GEL instructed an executing broker to sell shares at "15% of volume." Id. at 42.

Moreover, when GEL gave these directives, the Complaint alleges, GEL exercised discretion.[1] Id. at ¶ 41. To support this allegation, the Complaint mentions as an example a specific interaction between an executing broker and a GEL Bloomberg account registered to Mr. Galvani. Id. at ¶ 44. In this interaction, an executing broker asked GEL if it wanted to sell additional shares of a particular penny stock. Six seconds later, GEL responded "yes." Id. A plausible inference from this interaction is that GEL could not have received specific instructions authorizing this transaction from its customer in such a short amount of time and, therefore, exercised discretion.

Further still, defendants did not merely participate in trading securities sporadically. To the contrary, the SEC alleges that the defendants participated in a large volume of securities transactions: more than 19,000 trades of more than 300 billion shares of stock of more than 400 issuers that generated more than $1.2 billion of trading proceeds for approximately 60 GEL customers. Compl. at ¶ 40.

Put together, these factual allegations support the plausible inference that the defendants "engaged in the business of effecting transactions in securities for the account of others." See 15

---

[1] At oral argument, defense counsel provided grounds to doubt that GEL was expressly authorized to exercise this discretion. Oral Argument of Mar. 10, 2023, Tr. 2:35-9:24. Even if GEL was not so authorized, however, the SEC alleges that GEL exercised discretion as a matter of fact. See id. at 15:20-22; Compl. at ¶¶ 41-45.

U.S.C. § 78c(a)(4)(A). Thus, the Complaint plausibly alleges that the defendants were brokers and therefore were subject to the Registration Requirement.

   2. Whether Defendants Satisfied the Registration Requirement

   The Complaint pleads ample facts to support its allegation that the defendants did not satisfy the Registration Requirement. The Complaint plainly asserts that neither GEL nor GEL Trustee ever registered as a broker-dealer. Compl., at ¶ 22. And while the Individual Defendants argue that they satisfied the Registration Requirement through their affiliation with a different (and properly registered) broker-dealer, the Complaint also alleges that the Individual Defendants' GEL-related activities occurring from June 2019 through May 2022 were outside the scope of their affiliation with that registered broker-dealer.[2] See, e.g., Roth v. SEC, 22 F.3d 1108, 1109 (D.C. Cir. 1994) ("If an individual is operating as a broker-dealer outside the course and scope of his employment, the employer's registration would seem to have little relevance."); Compl., ¶¶ 23-25 (alleging that the Individual Defendants' GEL-related activities were not supervised by their affiliated broker-dealer until May 2022, at the earliest). Thus,

---

[2] Defendants purport to make this argument on behalf of the GEL entities as well, but it plainly fails with respect to them. Section 15(a) only allows "natural persons" to satisfy the Registration Requirement by associating with a registered broker-dealer. See 15 U.S.C. § 78o(a)(1).

the Complaint plausibly alleges that the defendants did not satisfy the Registration Requirement.

III. Conclusion

For the foregoing reasons, the Court reconfirms the rulings made in its March 16 order. Accordingly, the defendants' motion to dismiss the Complaint is denied.

SO ORDERED.

Dated:    New York, NY

April 28, 2023                            JED S. RAKOFF, U.S.D.J.