UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>GEL DIRECT TRUST,<br>GEL DIRECT, LLC,<br>JEFFREY K. GALVANI,<br>STUART A. JEFFERY,<br><br>Defendants. | Civ. Action No. 1:22-cv-09803-JSR<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO EXCLUDE DEFENDANTS' EXPERT JEFFREY S. HOLIK**

/s/ Keefe M. Bernstein
Keefe M. Bernstein*
Derek B. Kleinmann*
Jaime Marinaro*

*Admitted Pro Hac Vice*

Securities and Exchange Commission
801 Cherry Street, Suite 1900
Fort Worth, Texas 76102
Tel: (817) 900-2607 (Bernstein)
bernsteink@sec.gov
Tel: (817) 900-2623 (Kleinmann)
kleinmannd@sec.gov
Tel: (817) 900-2639 (Marinaro)
marinaroj@sec.gov

Counsel for Plaintiff
Securities and Exchange Commission

June 16, 2023

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................iii-iv

PRELIMINARY STATEMENT .............................................................................1

PROCEDURAL BACKGROUND..........................................................................2

ARGUMENT AND AUTHORITIES .....................................................................3

    I.    Holik's Legal Opinions About the Broker Factors are Improper ...................3

          A.  Holik offers inadmissible legal opinions .............................................4

          B.  Holik's opinions are not reliable..........................................................6

    II.   Holik's Opinions about Overlapping Regulation Are Improper....................8

          A.  This case is not about the federal banking laws......................................8

          B.  All brokers must register......................................................................10

    III.  Holik's Remaining Opinions are Also Not Relevant......................................11

CONCLUSION......................................................................................................13

# TABLE OF AUTHORITIES

**Federal Cases**

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) .................................................................................................. 3

*FTC v. Ken Roberts Co.*,
   276 F.3d 583 (D.C. Cir. 2001) ................................................................................... 9

*In re Aluminum Warehousing Antitrust Litig.*,
   336 F.R.D. 5, 27 (S.D.N.Y. 2020) ............................................................................. 4

*In re Initial Pub. Offering Sec. Litig.*,
   174 F. Supp. 2d 61 (S.D.N.Y. 2001) ......................................................................... 4

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) .................................................................................................. 3

*Major League Baseball Props. v. Salvino, Inc.*,
   542 F.3d 290 (2d Cir. 2008) ...................................................................................... 7

*Marx & Co. v. Diner's Club, Inc.*,
   550 F.2d 505 (2d Cir. 1977) ...................................................................................... 4

*Riegel v. Medtronic, Inc.*,
   451 F.3d 104 (2d Cir. 2006) ...................................................................................... 7

*SEC v. Kenton Cap., Ltd.*,
   69 F. Supp. 2d 1 (D.D.C. 1998) ................................................................................ 7

*SEC v. Mannion*, No. 10 Civ. 3374
   2013 WL 1291621 (N.D. Ga. Mar. 25, 2013) ........................................................ 10

*SEC v. Martino*,
   255 F. Supp. 2d 268 (S.D.N.Y. 2003) .................................................................. 6, 7

*SEC v. Revelation Cap. Mgmt., Ltd.*,
   215 F. Supp. 3d 267 (S.D.N.Y. 2016) .................................................................... 12

*United States v. Bilzerian*,
   926 F.2d 1285 (2d Cir. 1991) .............................................................................. 4, 5, 6

*United States v. Duncan*,
   42 F.3d 97 (2d Cir. 1994) .......................................................................................... 5

*United States v. Williams*,
   506 F.3d 151 (2d Cir. 2007) ...................................................................................... 3

**Federal Statutes**

**Exchange Act of 1934**

Section 15(a)
 [15 U.S.C. § 78o(a)]........................................................................................1, 2, 4, 9, 11

Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this Memorandum of Law in Support of its Motion to Exclude the report and testimony of Jeffrey S. Holik ("Holik"), Defendants' proposed expert witness.

**PRELIMINARY STATEMENT**

Defendants have retained a securities lawyer who seeks to offer opinions that: (1) interpret the factors set out by the case law that he thinks the jury should consider in determining whether GEL is a broker; (2) opine that GEL was not a broker based on his application and interpretation of those factors; and (3) offer policy opinions about why the SEC should not regulate GEL, arguing that other regulatory schemes exist to protect investors.[1] However, Holik's opinions are inadmissible legal opinions and are unreliable. The policy opinions are also irrelevant and unfairly prejudicial.

The ultimate issue in this case is whether Defendants acted as unregistered brokers under Section 15(a) of the Securities Exchange Act of 1934 ("Exchange Act"). Courts have set forth several non-exclusive factors that are indicative of broker activity. Holik offers opinions on what those factors are, on which factors apply in this case, and then on the ultimate issue by telling the jury that GEL was not engaged in broker activity based on his application of the factors he selected. These opinions are inadmissible: it is well settled that an expert cannot testify on issues of law or about the legal significance of facts presented at trial. If this case proceeds to trial, the Court will properly instruct the jury on what constitutes a broker under applicable law. The jury, not a paid legal expert, will apply the facts to those instructions.

Furthermore, Holik's opinions on the broker factors are not reliable because he provides no explanation or analysis about how he reached his conclusions, and he does not provide or cite

---

[1] Holik's Report does not define his use of the term "GEL," but it appears to refer collectively to Defendants GEL Direct Trust and its managing trustee, GEL Direct, LLC.

to any evidence in support of those conclusions. Holik merely makes a series of unsupported conclusory statements mixed with a series of conclusory opinions. An expert must explain and establish a factual basis for his opinions. Conclusory opinions are inadmissible.

Holik also opines about policy considerations that rely on inadmissible legal opinions, are irrelevant to the SEC's claims, and are unfairly prejudicial. Specifically, he opines that the SEC has no legal jurisdiction and should not regulate GEL, because the banks (where GEL held accounts) are regulated by banking regulators, and the executing brokers (which GEL used to trade the securities at issue) were registered with the SEC. Once again, jurisdiction is a legal question. Further, the fact that other participants in the securities transactions at issue are (or should be) regulated has no bearing on whether GEL violated Section 15(a). None of Holik's policy opinions will assist the jury in deciding the narrow issues in this case and, if Holik offers them at trial, it will create a substantial risk of jury confusion and unfair prejudice to the SEC.

Holik offers similarly irrelevant and prejudicial opinions on the SEC's motivation for bringing this case and on whether GEL caused investor harm. Again, these opinions will not assist the jury in deciding whether GEL violated a strict-liability registration statute, and they create a substantial risk of jury confusion and prejudice. Holik's opinions on these points, like his other opinions, are also nothing more than a series of unsupported conclusory statements.

## PROCEDURAL BACKGROUND

On April 7, 2023, Defense counsel served Holik's expert report in this case. Bernstein Dec, Ex. A (Expert Report of Jeffrey S. Holik ("Holik Rpt.")). On June 2, 2023 – more than a month after the Court's April 28, 2023 final expert disclosure deadline – Defense counsel served a supplemental report from Holik without leave of Court that purports to expand his opinions. Civil Case Management Plan (Dkt. 39); Bernstein Dec., Ex. B (Supplemental Expert Report of

Jeffrey S. Holik ("Holik Supp.")). On June 7, 2023, the SEC took Holik's deposition. Bernstein Dec., Ex. C (Excerpts from the Deposition of Jeffrey S. Holik ("Holik Dep.")).

## ARGUMENT AND AUTHORITIES

Trial judges are charged as gatekeepers to exclude unreliable, irrelevant, or unnecessary expert testimony. *See* note, 2000 Amendments to FED. R. EVID. 702, citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). Rule 702 of the Federal Rules of Civil Procedure sets forth the requirements for the admission of expert testimony. FED. R. EVID. 702. "The Second Circuit has distilled [those] requirements into three broad criteria: (1) qualifications, (2) reliability, and (3) relevance and assistance to the trier of fact." *In re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. 5, 27 (S.D.N.Y. 2020) (internal quotation omitted). The proponent of the expert testimony bears the burden of establishing that these admissibility requirements are met by a preponderance of the evidence. *Id.* (citing *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007)).

Even if an expert's proffered testimony satisfies these requirements, the district court should still properly exclude the testimony under Rule 403 of the Federal Rules of Evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Daubert*, 509 U.S. at 595 (quoting FED. R. EVID. 702). Because "[e]xpert evidence can be both powerful and quite misleading … the judge in weighing possible prejudice against probative force under Rule 403 … exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595 (quotation omitted).

### I. Holik's Legal Opinions About the Broker Factors Are Improper

At Sections V.B and V.E of his report, Holik offers opinions on the interpretation and applicability of the non-exclusive factors that courts have found are indicative of brokerage

3

activity. Bernstein Dec., Ex. A (Holik Rpt. at 9-10, 12-13); *see also* Ex. B (Holik Supp. at 5-6). These opinions are inadmissible legal opinions. They are also not reliable.

**A. Holik offers inadmissible legal opinions.**

Expert testimony on issues of law or the legal significance of facts presented at trial is inadmissible. *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991); *Marx & Co. v. Diner's Club, Inc.*, 550 F.2d 505, 509-10 (2d Cir. 1977). The Court, not an expert, instructs the jury on the law and how to apply it. *Bilzerian*, 926 F.2d at 1294.

This case centers on whether Defendants acted as brokers under Section 15(a) of the Exchange Act. If this case proceeds to trial, the Court will properly instruct the jury on what constitutes a broker under applicable law. *See In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 69 (S.D.N.Y. 2001) ("…there is no such thing as an expert opinion when it comes to interpreting a statute unless that opinion belongs to a court"). It is entirely improper for Holik to opine on these issues, much less advise the jury about which factors to apply, how to apply them, and/or what conclusions to reach. *Bilzerian*, 926 F.2d at 1294 (an expert may not "usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it.").

Yet, that is exactly what Holik does here. Holik's proffered expertise is his experience as a lawyer. Bernstein Dec., Ex. A (Holik Rpt. at 4-7), Ex. C (Holik Dep. 17:4-11), and Ex. D (Holik CV). His methodology was to review and interpret the case law and the SEC guidance. *Id.* at Ex. C (Holik Dep. 35:24-36:8; 36:14-37:1; 57:15-21; 80:23-81:6).

In so doing, Holik opines that to determine whether a person acts as a broker, *courts* apply a facts-and-circumstances test with no one factor being dispositive. *Id.* at Ex. A (Holik Rpt. at 9, 12). Holik then opines that GEL's conduct does not satisfy some of the factors that

*courts* have found are indicative of brokerage activity. *Id.* at Ex. A (Holik Rpt. at 9-10). Holik further opines that the "SEC overplays the importance of the transaction-based compensation" factor, because *courts* have concluded that transaction-based compensation alone may not be sufficient to make a person a broker. *Id.* at Ex. A (Holik Rpt. at 12-13). Holik concludes that GEL should not have to register as a broker because it does not satisfy the broker factors that he selected from the case law. *Id.* at Ex. A (Holik Rpt. at 9-10). However, as mentioned, it is not an expert's role to instruct the jury on what the law is, how to apply the law, or what other courts have concluded.

In addition, Holik is improperly telling the jury how to decide the ultimate issue in the case by opining that GEL should not be subject to the Exchange Act's broker registration requirements. *See, e.g., Id.* at Ex. A (Holik Rpt. at 13) and Ex. C (Holik Dep. 25:2-9; 130:11-13 (examination by defense counsel) (Q: "But in your expert opinion, sir, did GEL need to register as broker? A: No, they did not.")). This is well-settled ground for exclusion. *See Bilzerian*, 926 F.2d at 1295 (affirming trial court's decision to exclude former SEC official from testifying about whether defendant's conduct complied with legal disclosure requirements); *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) ("When an expert undertakes to tell the jury what result to reach, this does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's.").

Holik also cannot transform his legal assessments into admissible expert testimony by merely trying to re-characterize his legal opinions as interpretations of "SEC guidance." The SEC guidance is based on the applicable legal authority, and it is only relevant to the extent it

5

informs the scope of broker activity under applicable case law.[2] Indeed, if Holik were allowed to present his opinions at trial, the SEC would be in the position of cross examining him on the meaning of case law and the SEC's own No-Action Letters.

**B. Holik's opinions are not reliable.**

The Court should also exclude Holik's opinions about the broker factors, because they are not reliable. An expert opinion is reliable under Rule 702 if: (1) it is "grounded on sufficient facts or data;" (2) "'is the product of reliable principles and methods,'" and (3) the expert has "applied the principles and methods reliably to the facts of the case." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (quoting FED. R. EVID. 702).

Holik contends that the SEC does not allege that GEL engaged in many of the activities that he claims are "hallmarks" of a brokerage business, including purchasing securities, advertising, or providing investment advice. Bernstein Dec., Ex. A (Holik Rpt. at 9-10). He then concludes that GEL's business should be treated as clerical or ministerial in nature, and akin to a firm that provides only back-office services to broker-dealers. *Id.*

However, Holik provides no facts or analysis to support his conclusions. As Holik concedes, there are many factors that are indicative of brokerage activity and no one factor is dispositive or applies in every case. *Id.* at Ex. A (Holik Rpt. at 9). These factors are also considered in the context of a primary indicia: whether the defendant participated in key points of the chain of distribution of securities transactions. *SEC v. Martino*, 255 F. Supp. 2d 268, 283

---

[2] Holik likewise cannot transform his legal assessments into admissible expert testimony if he were to re-couch his legal opinions as industry practice. As the Second Circuit has noted, "testimony encompassing an ultimate legal conclusion based upon the facts of the case is not admissible, and may not be made so simply because it is presented in terms of industry practice." *Bilzerian*, 926 F.2d at 1295. That is particularly the case where, as here, the expert is a lawyer offering opinions on the interpretation of a statute using factors established by case law—and <u>not</u> establishing industry standards of practice and then identifying departures from them.

6

(S.D.N.Y. 2003); *SEC v. Kenton Cap., Ltd.,* 69 F. Supp. 2d 1, 12-13 (D.D.C. 1998).

Holik does not address the chain of distribution or many of the additional broker factors, much less provide any analysis or support for why he applied the factors he did and not the others. Bernstein Dec., Ex. A (Holik Rpt. at 9-10) and Ex. C (Holik Dep. 54:22-55:5; 59:5-60:10; 74:24-75:25).[3] Instead, Holik cherry picks a handful of the factors that he believes help the Defendants' position and, without explanation, ignores the ones that do not. *Riegel v. Medtronic, Inc.*, 451 F.3d 104, 127 (2d Cir. 2006) ("An expert opinion requires some explanation as to how the expert came to his conclusion and what methodologies or evidence substantiate that conclusion."), *aff'd on other grounds*, 552 U.S. 312 (2008); *Major League Baseball Props.*, 542 F.3d 290, 311 (2d Cir. 2008) (an expert must establish a factual basis for opinions and conclusory opinions are inappropriate).[4]

Similarly, Holik provides no analysis or factual support for his conclusion that GEL's business should be "looked at" as a clerical-and-ministerial-back-office-only firm. He offers this as a conclusory statement with no explanation or support for what GEL was or was not doing for its customers, or how he determined those activities were only clerical and ministerial. Bernstein Dec., Ex. A (Holik Rpt. at 10). For example, Holik's report does not address the Bloomberg

---

[3] Courts consider a variety of conduct as indicative of broker activity, "including whether the person: (1) actively solicits investors; (2) receives transaction-based compensation; (3) handles securities or funds of others in connection with securities transactions; (4) processes documents related to the sale of securities; (5) participates in the order-taking or order-routing process; (6) sells, or previously sold, securities of other issuers; (7) is an employee of the issuer; (8) is involved in negotiations between the issuer and the investor; and/or (9) makes valuations as to the merits of the investment or gives advice." *See* Court's Opinion and Order denying Defendants' Motion to Dismiss at 5 (Dkt. 38) (citing cases).

[4] Holik's Report also does not specifically identify the materials that he reviewed in preparing to draft his report and/or in developing his opinions, and Holik does not know if he could reconstruct the documents that he reviewed to reach his conclusions. Bernstein Dec., Ex. C (Holik Dep. 28:3-10).

chats in which GEL instructed executing brokers on trading terms. When pressed on this point during his deposition, Holik admitted that his sole basis for purportedly now claiming the chats were merely clerical, was "how they looked to me . . . . I have no other basis." *Id.* at Ex. C (Holik Dep. 77:20-78:13). It is unreliable for an expert to merely offer conclusory opinions that regurgitate a party's narrative without establishing a factual basis for the opinions.

Indeed, the only materials that Holik cites in connection with his opinion on this point are a handful of SEC No-Action Letters in which the SEC granted no-action relief to specific entities under different circumstances. *Id.* at Ex. A (Holik Rpt. at 10, n. 7). Holik undertakes no effort to show that GEL's actions match the actions of the entities that were the subjects of the No-Action Letters or to establish what that would mean for this case if they did. Indeed, Holik concedes that he was not able to identify any SEC No-Action letters that directly support his opinions about GEL. *Id.* at Ex. C (Holik Dep. 73:2-6). If anything, Holik's citation to SEC No-Action Letters reinforces that Holik's report is essentially a legal brief addressing what Holik, a lawyer, believes a broker *should be*, based on his interpretation of legal precedent.

## II.     Holik's Opinions about Overlapping Regulation Are Improper

At Sections V.C and V.D of his report, Holik opines that other participants in the chain of distribution of the securities at issue were subject to regulatory oversight. *Id.* at Ex. A (Holik Rpt. at 11-12); *see also* Ex. B (Holik Supp. at 6). These opinions include improper legal opinions and are also irrelevant, unreliable, and unfairly prejudicial.

### A. This case is not about the federal banking laws.

The Court should exclude Holik's opinion that the custodial activities at issue were properly supervised under the federal banking laws. At the outset, Holik's interpretation and application of banking laws, and his conclusions about the scope of the SEC's legal jurisdiction, are again improper legal opinions. Indeed, it is difficult to imagine an opinion that would be

8

more of a legal opinion than an expert opining on the application of laws and the scope of legal jurisdiction.

Further, Holik's opinions are neither relevant nor reliable. As part of its business, GEL opened accounts in its name at custodian banks and had its customers deposit their securities into GEL's account at those banks where they were commingled. *See* Plaintiff's Rule 56.1 Statement at ¶¶ 19-23 (Dkt. 44). These banks (*e.g.,* U.S. Bank) are subject to banking regulations.

However, GEL is not a bank (and Holik does not contend that it is), and Holik does not and cannot point to any evidence that banking regulators were overseeing <u>GEL's</u> business. Bernstein Dec., Ex. A (Holik Report at 11-12) and Ex. C (Holik Dep. 100:4-9). Holik also ignores that the bank accounts at the custodian banks are <u>GEL</u> accounts, and that any banking protections extended to GEL's accounts at the custodial banks, and not to GEL's underlying customers, who did not have accounts at the custodial banks. *Id.* at Ex. C (Holik Dep. 105:19-24).

In any event, whether banking regulators exercise oversight over the banks that GEL used is not relevant, because it has no bearing on whether GEL acted as an unregistered broker in violation of Section 15(a) of the Exchange Act. Nor does the potential for dual regulatory oversight somehow absolve GEL of its responsibility to register with the SEC. *FTC v. Ken Roberts Co.*, 276 F.3d 583, 593 (D.C. Cir. 2001) ("Because we live in an age of overlapping and concurring regulatory jurisdiction…, a court must proceed with the utmost caution before concluding that one agency may not regulate merely because another may.") (internal quotation marks and citations omitted).

In sum, Holik merely offers a policy opinion that the SEC does not need to regulate the space in which GEL operates, because he believes that banking regulators could do so.

Bernstein Dec., Ex. C (Holik Dep. 95:11-96:2; 98:17-99:13). That is not an issue for this jury to decide. *SEC v. Mannion*, No. 10 Civ. 3374 (WSD), 2013 WL 1291621, at *8 (N.D. Ga. Mar. 25, 2013) (excluding expert testimony where defendants failed to meet burden of showing the opinion was relevant to the issue presented by the SEC's claims).

### B. All brokers must register.

Holik similarly argues at Section D of his report that the executing brokers are subject to regulation by the SEC and FINRA. Bernstein Dec. Ex. A (Holik Rpt. at 12). This opinion is also not relevant or reliable, and will only serve to confuse the issues at trial and cause unfair prejudice.

All brokers in the chain of distribution must register, including, but not limited to, executing brokers, clearing brokers, and introducing brokers. *Id.* at Ex. C (Holik Dep. 107:3-23). As Holik acknowledges, there is no exemption from registration for brokers who use a registered broker for part of a securities transactions in which they participate. *Id.* at Ex. C (Holik Dep. 108:22-25).[5] The fact that the executing brokers were registered is not a factor the jury can or will consider in determining whether GEL was required to register. Holik is merely again advancing his opinion that, as he testified, from a "policy perspective" additional regulation in this area is not necessary. *Id.* at Ex. C (Holik Dep. 93:20-94:17; 106:3-17). Holik's policy views about how regulators should exercise their authority is not relevant to the determination of whether GEL was required to register under the applicable laws.

---

[5] This makes sense, because if, for example, an unregistered broker is not properly suited to safeguard hundreds of millions of dollars in cash and securities that it handles in its securities business, the fact that it used registered brokers to execute sales will not protect market participants from this risk.

10

However, even if Holik's opinion was relevant, it is not reliable.  Holik bases his opinion on an unsupported claim that the executing brokers conducted due diligence over the accounts.  Setting aside that this fact (if true) would have no impact on a determination of the SEC's claims in this case, it again ignores that GEL (not its customers) opened and held the DVP accounts at the executing brokers.  Plaintiff's Rule 56.1 Statement at ¶ 27.  The executing brokers' had one customer, GEL; they were not monitoring GEL's customers.  *Id.* at ¶¶ 43-44.  Tellingly, Holik admits that, in reaching his conclusions, he did not even know whether the executing brokers knew who GEL's customers were or performed any due diligence on them (they did not).  Bernstein Dec, Ex. C (Holik Dep.  102:1-5; 105:19-24).

### III.     Holik's Remaining Opinions are Also Not Relevant

Throughout his report, Holik also offers multiple other unsupported opinions that are not relevant to the SEC's claims, will not assist the jury, and will potentially give rise to jury confusion and substantial prejudice to the SEC:

- "The SEC seeks for the first time to assert jurisdiction over a firm providing an innovative and efficient bundle of software and associated back-office services which operate as a bridge between issuers and executing broker-dealers in selling shares of thinly-traded securities held by institutional and accredited investors." *Id.* at Ex. A (Holik Rpt. at 9).

- "Essentially, the SEC claims here that GEL must register because it assists investors in transacting lawful securities business that regulators wish would cease to exist." "There is no need for the SEC to require registration of GEL to fulfill any market or investor protection purpose." *Id.* at Ex. A (Holik at 10, 13); *see also* Ex. B (Holik Supp. at 7).

11

- "I saw no evidence that any investor ever was confused or misled. I am not aware that any investor, bank, or broker-dealer complained about GEL's services." "No investor here has been hurt." *Id.* at Ex. A (Holik Rpt. at 11, 13); *see also* Ex. B (Holik Supp. at 7).

Holik again provides no support for any of these statements, which is reason alone to exclude them. They are also entirely irrelevant to the issue that the jury would be deciding – namely, whether the Defendants' conduct violated Section 15(a) of the Exchange Act. Conclusory statements about whether the SEC has exercised jurisdiction over a firm like GEL before or whether the SEC has a view on the type of trading that GEL facilitated, will not assist the jury in applying the facts to the Court's instructions to determine whether GEL was acting as an unregistered broker under the statute. Indeed, Holik admits that these opinions are again only relevant to his policy opinions about whether there is a need for government regulation in this area. *Id*. at Ex. C (Holik Dep. 88:13-17; 89:5-12).

Likewise, whether investors were happy with GEL's services is inconsequential to the strict-liability claim that the jury will be deciding. *See SEC v. Revelation Cap. Mgmt., Ltd.*, 215 F. Supp. 3d 267, 282 (S.D.N.Y. 2016) (excluding expert seeking to testify about what market participants would have understood about the applicability of an SEC short-selling rule, because it was irrelevant to any issue the jury would have to decide on the strict liability claim). Worse, allowing Holik to testify on these points would likely confuse the jury and cause unfair prejudice to the SEC by leading jurors to believe that the case is about something that it is not and that the SEC is required to show elements (*e.g.* investor harm) beyond the scope of its claims.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this motion, exclude Holik's report and testimony, and grant the SEC such other or further relief to which it is justly entitled.

Dated: June 16, 2023

Respectfully submitted,

/s/ Keefe M. Bernstein
Keefe M. Bernstein*
Derek B. Kleinmann*
Jaime Marinaro*

*Admitted Pro Hac Vice*

Securities and Exchange Commission
801 Cherry Street, Suite 1900
Fort Worth, Texas 76102
Tel: (817) 900-2607 (Bernstein)
bernsteink@sec.gov
Tel: (817) 900-2623 (Kleinmann)
kleinmannd@sec.gov
Tel: (817) 900-2639 (Marinaro)
marinaroj@sec.gov

Counsel for Plaintiff
Securities and Exchange Commission