UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

GEL DIRECT TRUST,
GEL DIRECT, LLC,
JEFFREY K. GALVANI,
STUART A. JEFFERY,

Defendants.

Civ. Action No. 1:22-cv-09803-JSR

**JURY TRIAL DEMANDED**

# PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR
# PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANTS

Keefe M. Bernstein*
Derek B. Kleinmann*
Jaime Marinaro*

*Admitted Pro Hac Vice*

Securities and Exchange Commission
801 Cherry Street, Suite 1900
Fort Worth, Texas 76102
Tel: (817) 900-2607 (Bernstein)
bernsteink@sec.gov
Tel: (817) 900-2623 (Kleinmann)
kleinmannd@sec.gov
Tel: (817) 900-2639 (Marinaro)
marinaroj@sec.gov

July 24, 2023

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

A.  Defendants Mischaracterize the Applicable Legal Standard ................................... 1

B.  Defendants Regularly Participated At Key Points In The Chain of Distribution ... 2

C.  The SEC Has Established Multiple Additional Broker Factors .............................. 3

    1.  GEL Received Transaction Based Compensation ............................................ 3

    2.  GEL handled securities and funds of others in connection with securities transactions .. 5

    3.  GEL participated in the order-taking and order-routing process ..................... 5

    4.  GEL effectuated the sale of securities for multiple issuers .............................. 6

    5.  GEL was not an employee of the issuers .......................................................... 6

    6.  GEL processed documents related to the sales of securities ............................ 6

    7.  GEL solicited ongoing securities-business relationships .................................. 6

D.  GEL Is Not A Finder ................................................................................................ 7

E.  GEL Is Not A Purely Clerical Firm .......................................................................... 9

CONCLUSION ........................................................................................................................ 10

## TABLE OF AUTHORITIES

**Federal Cases**

*Rhee v. SHVMS, LLC*
  2023 WL 3319532 (S.D.N.Y May 8, 2023) ............................................................... 2, 7, 8, 9

*SEC v. Benger*,
  697 F. Supp. 2d 932 (N.D. Ill. 2010) ................................................................................... 8

*SEC v. Bravata*,
  3 F. Supp. 3d 638 (E.D. Mich. 2014) .................................................................................. 6

*SEC v. CKB168 Holdings, Ltd.*,
  210 F. Supp. 3d 421 (E.D.N.Y. 2016) .............................................................................. 1, 2

*SEC v. Colyard*,
  154 F. Supp. 3d 781 (D. Minn. 2015) .............................................................................. 1, 2

*SEC v. Hansen,*
  1984 WL 2413 (S.D.N.Y. Apr. 6, 1984) ....................................................................... 1, 2, 8

*SEC v. Helms,*
  2015 WL 6438872 (W.D. Tex. Oct. 20, 2015) ..................................................................... 7

*SEC v. Kenton Cap., Ltd.*,
  69 F. Supp. 2d 1 (D.D.C. 1998) ........................................................................................... 2

*SEC v. M & A West, Inc.,*
  2005 WL 1514101 (N.D. Cal June 20, 2005) ............................................................... 7, 8, 9

*SEC v. Martino*,
  255 F. Supp. 2d 268 (S.D.N.Y. 2003) ....................................................................... 1, 2, 6, 8

**Federal Statutes**

**Exchange Act of 1934**

Section 15(a)
  [15 U.S.C. § 78o(a)].............................................................................................................. 1

Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this Reply in Support of its Motion for Partial Summary Judgment ("Motion") against Defendants GEL Direct Trust ("GEL"), GEL Direct, LLC ("GEL Trustee"), Jeffrey K. Galvani ("Galvani"), and Stuart A. Jeffery ("Jeffery") (collectively, "Defendants"), and responds to Defendants' Memorandum in Opposition to the Motion ("Opposition") as follows.

### A. Defendants Mischaracterize the Applicable Legal Standard

Defendants' Opposition entirely relies on the incorrect premise that, to prevail at summary judgment, the SEC must show that Defendants' conduct satisfies all or most of the broker-indicative factors set out in *SEC v. Martino*, 255 F. Supp. 2d 268 (S.D.N.Y. 2003) and *SEC v. Hansen*, No. 83 Civ. 3692, 1984 WL 2413 (S.D.N.Y. Apr. 6, 1984).

"Effecting transactions in securities" has different meanings in different contexts, and not all of the many, non-exhaustive broker-indicative factors apply to the facts and circumstances of each case. To illustrate, the very broker factors Defendants claim the SEC has not shown apply to Defendants – *e.g.*, solicited investors to purchase securities; involvement in negotiations between the issuer and investor – also do not apply to the executing brokers that GEL used. Nonetheless, both sides agree these executing brokers are brokers.

For that reason, courts may consider a broad range of circumstance-dependent conduct as indicative of broker activity. *See* Dkt. 38, Court's Opinion and Order denying Defendants' Motion to Dismiss at 5 (listing factors and citing cases). Courts routinely grant summary judgment on Section 15(a) claims based on a showing that the defendant engaged in some combination of the broker factors that are applicable to the business at issue. *See, e.g., SEC v. Colyard,* 154 F. Supp. 3d 781, 789 (D. Minn. 2015), *vacated in part on other grounds*, 935 F.3d 721 (8th Cir. 2019) (collecting cases); *SEC v. CKB168 Holdings, Ltd.*, 210 F. Supp. 3d 421, 453

1

(E.D.N.Y. 2016) (same). The SEC is not required to establish all of the applicable factors, much less all of the possible factors. *Colyard,* 154 F. Supp. 3d at 789.

GEL's business was to act as an introducing broker that facilitated the sale of penny stocks that its customers brought to GEL to sell in the Over-the-Counter market. Some of the broker-indicative factors apply to this type of business, and some do not. The SEC has conclusively demonstrated that Defendants engaged in substantial broker conduct, including conduct that satisfies multiple broker factors that are applicable to GEL's business. The SEC is therefore entitled to summary judgment.

**B. Defendants Regularly Participated At Key Points In The Chain of Distribution**

Regular participation in securities transactions at key points in the chain of distribution is a primary, if not the primary, indicia of whether a person or firm is a broker. *Martino*, 255 F. Supp. 2d at 283; *SEC v. Kenton Cap., Ltd.,* 69 F. Supp. 2d 1, 12-13 (D.D.C. 1998). Indeed, the three cases Defendants repeatedly cite to in their Opposition – *Martino*, *Hansen*, and *Rhee* – all make this critical point. *Martino*, 255 F. Supp. 2d at 283; *Hansen*, 1984 WL 2413, at *10; *Rhee v. SHVMS, LLC*, 21-cv-4283, 2023 WL 3319532, at *8 (S.D.N.Y May 8, 2023). However, Defendants completely ignore it, choosing instead to focus on factors that are completely inapplicable to Defendants' activities.

The Motion shows in detail that Defendants were necessary and substantial participants at multiple key points in the chain of distribution of its customers' securities transactions, and that this participation – which involved thousands of trades, over one billion dollars in proceeds, and approximately 60 customers – was Defendants' regular business and not an isolated occurrence. *See* Dkt. 43, Plaintiff's Memorandum in Support of the Motion ("Plaintiff's MOL") at 15-16. Defendants' Opposition does not address, much less contest, Defendants' regular participation in

2

the chain of distribution. Nor can it, because once the focus is properly placed there, it is beyond question that Defendants were acting as brokers. The undisputed evidence establishing this factor, standing alone, warrants summary judgment.

### C. The SEC Has Established Multiple Additional Broker Factors

The Motion further establishes that GEL's conduct satisfies numerous other *applicable* broker-indicative factors. Defendants' Opposition does not raise a genuine issue of fact on any of these factors.

#### 1. *GEL Received Transaction Based Compensation*

The Motion conclusively demonstrates that GEL received transaction-based compensation. Plaintiff's MOL at 11, 17. Indeed, Defendants *admitted* in their Answer that GEL received transaction-based compensation. SOF ¶ 66.[1]

Defendants further admitted in their Answer that GEL charged a $30 trade-settlement fee each time it completed a trade on behalf of a customer. SOF ¶ 69. Jeffery testified under oath that this transaction-based fee included a markup for GEL's benefit, and the fee was therefore not only a pass-through:

> Q: And then it's trade settlement fee of $30. Do you see that?
>
> A: Yep.
>
> Q: What was a trade settlement fee?
>
> A: It's $30.
>
> Q: No, no, well, I understand the amount. What was the purpose of a trade settlement fee?

---

[1] "SOF" citations refer to Plaintiff's Rule 56.1 Statement in Support of the Motion (Dkt. 44), and "App" citations refer to the corresponding paginated Appendix (Dkts. 44.1-49.1).

> A: Oftentimes with the, with the banks that we worked with there would be a charge to us for settling a trade. And we simply applied a slight **mark-up** on that and passed those costs through to the client.

*Id.* (emphasis added) (App. 325)  The GEL and bank fee schedules also shows that the fee was not merely a pass-through and included a markup by GEL.  *Id.*  (App. 156 v. 167)

It is likewise undisputed that GEL charged its customers a fee for each deposit of securities the customer made into a GEL custodian account to sell, and that these fees also included a markup for GEL's benefit and were not only a pass-through.  SOF ¶¶ 67-68.  (App. 255-256; 156 v. 157)

Yet, Defendants now claim that one of these transaction-based fees – the $30 settlement fee – was only a pass-through, and "GEL would not have made any more or less money if a transaction occurred or it didn't."  Opposition ("Opp.") at 17.  Defendants' only purported support for this statement is a declaration from Galvani's brother that states in conclusory fashion that the $30 trade-settlement fee was a pass-through, because GEL used the money to offset a quarterly custody fee it was charged by the custodian banks.  Dkt. 57.55 Ex. EEE, G. Galvani Dec. at ¶ 9.  However, the fact that GEL used fees it collected to offset quarterly charges, even if true, does not establish the fee was not compensation to GEL in the first instance.

Moreover, as described above, Defendants' own admissions and documents establish that GEL received transaction-based compensation, and that it was receiving and benefiting from fees every time a deposit for sale or a sale transaction occurred.  Defendants cannot raise a fact issue by making claims that run directly contrary to their prior admissions in this case.

The Court should also reject Defendants' argument that their transaction-based compensation is somehow insufficient because Defendants did not have a "salesman's stake" in each transaction.  The type of transaction-based compensation at issue varies, like the applicable

4

broker factors, with the nature of the business. Here, Defendants were operating an intermediary, introducing-broker business. Defendants had an incentive to facilitate securities transactions, because the more securities deposits and sales that occurred in GEL's accounts, the more money Defendants made. Defendants' claim that GEL could sit around and watch movies all day and receive its account maintenance fees and other securities-services fees is also not credible. GEL's customers were only paying GEL these fees, because GEL was able to custody and facilitate the sale of their penny stocks, and all of the fees were tied to GEL continuing its securities' business.

### 2. *GEL handled securities and funds of others in connection with securities transactions*

The Motion conclusively demonstrates that GEL handled the securities and funds of its customers for over one *billion* dollars of securities transactions. Plaintiff's MOL at 5-9, 15-17. Defendants' only response to this factor is a conclusory statement that "GEL never handled any funds, as the banks did that." Opp. at 10. This is demonstrably false, as Defendants' admissions and bank records show that the funds (and securities) were in *GEL-controlled accounts*, and that GEL was directing the movement of those funds (and securities) to settle trades or disburse funds to customers. SOF ¶¶ 46-50. Defendants' argument that they were not handling funds simply because GEL held the money in banks is meritless. Brokers, trustees, attorneys, financial advisers, and other persons who handle the funds of others routinely keep those funds in financial institutions while they are under their control.

### 3. *GEL participated in the order-taking and order-routing process*

The Motion conclusively establishes that GEL's customers provided trade order instructions to GEL, and GEL routed these orders to executing brokers. Plaintiff's MOL at 6-8, 15-17. Defendants' Opposition does not contest this factor.

### 4.  *GEL effectuated the sale of securities for multiple issuers*

Defendants' Opposition does not directly address this factor.  Defendants do claim that "GEL never sold any shares, as the licensed brokerage firms and their respective clearing firms did that." Opp. at 10.  Defendants are wrong in the first instance.  The uncontroverted evidence establishes that GEL *did* sell shares, because it was the "seller" of the stocks sold out of its DVP brokerage accounts.  SOF ¶ 43.  The executing brokers have confirmed this, and it is evident on the face of the trade reports and related correspondence.  *Id.* (App. 127, 145-146, 335-336, 354). In any event, there is no genuine dispute that GEL was "effectuating" these sales – which could not have occurred without GEL's instructions and participation – or that the sales involved hundreds of issuers.

### 5.  *GEL was not an employee of the issuers*

Defendants do not dispute this factor.  However, Defendants appear to weigh the factor the wrong way.  Opp. at 21.  The fact that Defendants were *not* employees of the issuer is broker indicative.  *See, e.g. SEC v. Bravata*, 3 F. Supp. 3d 638, 660 (E.D. Mich. 2014) (quoting 17 C.F.R. § 240.3a4–1(a)(2)); *Martino*, 255 F. Supp. 2d at 284.

### 6.  *GEL processed documents related to the sales of securities*

The Motion conclusively establishes that GEL processed documentation for its customers' securities transactions, which GEL's customers could only obtain from GEL.  Motion at 9, 18.  Defendants do not contest this factor.

### 7.  *GEL solicited ongoing securities-business relationships*

Defendants argue that they did not actively solicit customers, because GEL obtained customers exclusively through referrals, GEL did not have a public website, and GEL did not attend conferences.  Opp. at 34.  The SEC does not dispute the narrow point that most of GEL's

customers came from referrals, although the SEC has submitted evidence that Galvani and Jeffery also obtained GEL customers by reaching out to customers from their previous ventures and that they maintained a "Global Equities Liquidity" website that advertised financial services, but does not specifically solicit under the "GEL Direct Trust" name.  SOF ¶¶ 7-8.[2]

However, a broker can solicit an ongoing securities-business relationship from customers it identifies through referrals.  For example, an executing broker provided Galvani a referral call list with a list of potential customers for Galvani to call personally.  SOF ¶ 7 (App. 169).  There is no genuine dispute that GEL was soliciting a securities-business relationship with the customers it found through referrals, because it was holding itself out to these customers as a firm that could facilitate securities transactions – *i.e.* provide customers a way to deposit, custody, and sell hard-to-trade penny stocks.  That was GEL's entire business.

### D. GEL Is Not a Finder

The Court should reject Defendants' argument that GEL is akin to a "finder."  Opp. at 15-16.  There is no "finder's exception" to the broker registration requirements in the Exchange Act.  However, some courts have a found a "very limited" exception to the registration requirement where a person not regularly engaged in a securities business acts merely as a finder to bring together parties to a securities transaction without more.  *See SEC v. Helms*, No. A-13-CV-01036, 2015 WL 6438872, at *3 (W.D. Tex. Oct. 20, 2015).

Defendants point to *SEC v. M & A West, Inc.*, No. C-01-3376 VRW, 2005 WL 1514101 (N.D. Cal June 20, 2005) and *Rhee*, 2023 WL 3319532.  Both cases are easily distinguishable.

---

[2]  Defendants claim they never actively used this website, but it was publicly available to customers and potential customers on the internet nonetheless.

In *M & A West, Inc.*, the court found that the SEC failed to explain how the defendant's conduct in a reverse merger case was different than, for example, lawyers and business people who work on merger transactions. 2005 WL 1514101, at *9. The court was particularly swayed by the fact that, unlike this case, "no assets were entrusted to [the defendant], and the Commission identifie[d] no evidence that he was authorized to transact 'for the account of others.'" *Id.*; *see also SEC v. Benger*, 697 F. Supp. 2d 932, 945, n.10 (N.D. Ill. 2010) (finding defendants reliance on *M & A West, Inc.* unavailing, because "the court found it particularly persuasive that 'no assets were entrusted' to the defendant.").

In *Rhee*, a private action in which a former employee sued her former employer for breach of contract, the defendant moved for summary judgment on its affirmative defense of illegality, on the grounds that the contract required the plaintiff to act as an unregistered broker. In considering whether the defendant met its summary-judgment burden to prove the plaintiff's broker status as a matter of law, the court focused on "whether the conduct of the individual may be 'characterized by 'a certain *regularity of participation* in securities transactions at key points in the chain of distribution.'" 2023 WL 3319532, at *8 (citing *Martino*, 255 F. Supp. 2d at 283 (quoting. *Hansen*, 1984 WL 2413, at *10) (emphasis in original). The court determined that it could not find the plaintiff was a broker as a matter of law, because the defendant failed to offer ***any*** undisputed facts bearing on the plaintiff's "regularity of participation in securities transactions," and instead offered only "loosely described and sparse facts" that failed to describe how many investors the plaintiff contacted, whether such contact was a large or small part of her job, and the nature of her involvement. *Id.* at *9-10. Those facts are in no way similar to the evidentiary showing that SEC has made in this case.

Here, the summary-judgment evidence establishes that Defendants did much more than merely bring together parties to transactions. Unlike in *M & A West, Inc.* and *Rhee,* the SEC has established that Defendants regularly participated at key points in the chain of distribution and that they engaged in extensive additional broker conduct. Customer assets were also entrusted to GEL, and GEL was authorized to and did facilitate over one billion dollars in trades for the accounts of its customers.

### E.  GEL Is Not A Purely Clerical Firm

Defendants provide no case law or statutory authority for imposing a "clerical or ministerial" exception to Defendants' conduct. Instead, Defendants rely generally on language from SEC no-action and denial of no-action letters stating that the term "effect" in the broker definition should be construed broadly to encompass not only persons who engage directly in the offer or sale of securities, but also those persons who perform anything other than purely ministerial or clerical functions with respect to securities transactions. Opp. at 12. Defendants miss the point of this language, which merely reiterates that the broker definition is construed *broadly* to include all person who perform other than *purely* ministerial or clerical functions.

Even assuming the Court adopted this phrasing as an exception to the broker registration requirement in this context, Defendants cannot raise a genuine issue that they performed *purely* ministerial or clerical functions. Taking custody and control of customer securities is not purely ministerial or clerical. Nor is taking and routing trade orders from customers. Directing executing brokers on the terms of those trades, including specific instructions on both price and volume, is also not purely ministerial or clerical under any reasonable interpretation. Nor is settling trades or holding, handling, and disbursing customers' trading proceeds. GEL was obviously not merely akin to a payroll-processing firm with no connection to the underlying

securities transactions, as Defendants suggest. *See* Opp. at 13. Defendants point to no SEC no-action letters, much less precedential authority, that would exempt them from registration in light of their conduct.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant its motion and grant it such other or further relief to which it is justly entitled.

Dated: July 24, 2023  Respectfully submitted,

/s/ Keefe M. Bernstein
Keefe M. Bernstein*
Derek B. Kleinmann*
Jaime Marinaro*

*Admitted Pro Hac Vice*

Securities and Exchange Commission
801 Cherry Street, Suite 1900
Fort Worth, Texas 76102
Tel: (817) 900-2607 (Bernstein)
bernsteink@sec.gov
Tel: (817) 900-2623 (Kleinmann)
kleinmannd@sec.gov
Tel: (817) 900-2639 (Marinaro)
marinaroj@sec.gov