UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                Plaintiff,<br><br>       -v-<br><br>GEL DIRECT TRUST, GEL DIRECT LLC, JEFFREY K. GALVANI, STUART A. JEFFERY,<br><br>                Defendants. | 22-cv-9803 (JSR)<br><br><u>OPINION AND ORDER</u> |

JED S. RAKOFF, U.S.D.J.

On June 16, 2023, plaintiff, the Securities and Exchange Commission ("SEC"), moved for summary judgment on liability on the claims asserted against defendants GEL Direct Trust ("GEL"), its managing trustee, GEL Direct, LLC ("GEL Trustee"), and its co-owners, Jeffrey K. Galvani and Stuart A. Jeffery (the "Individual Defendants"). <u>See</u> Notice of Mot. for Partial Summ. J., ECF No. 42. The SEC also moved to exclude defendants' expert, Jeffrey Holik. <u>See</u> Notice of Mot. to Exclude Defs. Expert Jeffrey S. Holik, ECF No. 50. After full consideration of the parties' written submissions and oral argument, the Court denied the SEC's motion for summary judgment and granted the motion to exclude Mr. Holik's expert report and testimony by "bottom-line" order dated March 13, 2024. <u>See</u> 3/13/24 Order, ECF No. 64. This Opinion reconfirms that order and explains the reasons for its rulings.

I.    Plaintiff's Allegations

In 2019, the Individual Defendants founded GEL, which they co-owned and controlled through GEL Trustee. Plaintiff's Statement of Facts ("Pl. Statement"), ¶¶ 2-3, ECF No. 44. Most of GEL's customers were individuals seeking to sell penny stocks. Id. ¶ 5. Although it is undisputed that GEL assisted its customers with selling their penny stocks, the parties dispute the exact nature of that assistance.

Many of the transactions followed a common pattern. The customers' stocks were held in custodial accounts at various financial institutions, with GEL providing instructions to the financial institutions regarding how the stocks should be handled. Id. ¶¶ 19, 24. Customers would then give GEL their trade order instructions for the stocks, which GEL relayed to executing brokers, who ultimately sold the shares. Id. ¶¶ 26, 29, 35-37, 42. Finally, when the trades were settled, the stocks were transferred out of the custodial accounts and funds were transferred into the custodial accounts. Id. ¶¶ 46-51; Defs. Resp. to Pl. Statement of Facts ("Defs. Resp. Statement"), ¶¶ 46-51, ECF No. 54. Between June 2019 and May 2022, GEL participated in 19,000 such trades, involving 300 billion shares of stock from more than 400 issuers, on behalf of approximately 60 customers. The trades generated $1.2 billion in proceeds. Pl. Statement, ¶¶ 56-57.

On November 17, 2022, the SEC sued GEL, GEL Trustee, and the Individual Defendants for acting as unlicensed brokers in violation of Sections 15(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). Compl., ¶¶ 58-62, ECF No. 1. The SEC also sued the Individual Defendants under Section 20(a) of the Exchange Act, alleging that the Individual Defendants were control persons of GEL and GEL Trustee. Id. ¶¶ 63-67. On February 3, 2023, defendants moved to dismiss the Complaint, which the Court denied. See 4/28/23 Op. and Order, ECF No. 38. On June 16, 2023, the SEC moved for summary judgment on liability against all defendants. See Notice of Mot. for Partial Summ. J. The SEC also moved to exclude Mr. Holik's expert report and testimony. See Notice of Mot. to Exclude Defs. Expert Jeffrey S. Holik. These motions were then fully briefed by both sides.

## II.   Discussion

### A. Summary Judgment

The Court first addresses the SEC's motion for summary judgment, because if granted, it would obviate the need to address the SEC's motion to exclude the expert report and testimony of Mr. Holik. The SEC argues there is no genuine dispute of material fact that GEL, GEL Trustee, and the Individual Defendants acted as brokers and accordingly violated Section 15(a) of the Exchange Act by failing to register. The SEC also argues there is no genuine

dispute of material fact that the Individual Defendants were control persons of GEL and GEL Trustee and thus are liable under Section 20(a) of the Exchange Act for GEL and GEL Trustee's failure to register as brokers.

### i. Legal Standard

The Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).[1] The SEC "bears the burden to demonstrate the absence of any genuine issues of material fact." New York v. Mountain Tobacco Co., 942 F.3d 536, 541 (2d Cir. 2019). To oppose summary judgment, defendants "must present competent evidence that creates a genuine issue of material fact," and "merely denying the [SEC's] allegations in a general way" is insufficient. McKinney v. City of Middletown, 49 F.4th 730, 738 (2d Cir. 2022). "A material fact is one that would affect the outcome of the suit under the governing law, and a dispute about a genuine issue of material fact occurs if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party." Aetna Life Ins. Co. v. Big Y Foods, Inc., 52 F.4th 66, 72 (2d Cir. 2022). In its review of the factual record, "the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party

---

[1] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, footnotes, and citations.

against whom summary judgment is sought." <u>Frost v. N.Y.C. Police Dep't.</u>, 980 F.3d 231, 242 (2d Cir. 2020).

## ii.  Section 15(a) of the Exchange Act

Section 15(a) of the Exchange Act makes it "unlawful for any broker . . . to make use of the mails or any means or instrumentality of interstate commerce to effect any transaction in, or to induce or attempt to induce the purchase or sale of, any security . . . unless such broker . . . is registered." 15 U.S.C. § 78o(a)(1). A "broker" is broadly defined as "any person engaged in the business of effecting transactions in securities for the account of others." 15 U.S.C. § 78c(a)(4)(A).

Here, it is undisputed that defendants were unregistered. For starters, GEL, GEL Trustee, and the Individual Defendants never individually registered as brokers. Defs. Resp. Statement, ¶¶ 75-77. Furthermore, it is undisputed that the registration exemption for associated persons is inapplicable. Although the Individual Defendants, Mr. Galvani and Mr. Jeffery, were associated with Crito, a broker-dealer, beginning in May and September 2020, respectively, GEL was listed as an "Outside Business Activity" and Crito did not supervise any of GEL's activities prior to May 31, 2022. Defs. Resp. Statement, ¶¶ 76-79. <u>See</u> <u>Roth v. SEC</u>, 22 F.3d 1108, 1109 (D.C. Cir. 1994) ("If an individual is operating as a broker-dealer outside the course and scope of his employment, the employer's registration would seem to have little relevance.").

Accordingly, the only dispute between the parties is whether GEL, GEL Trustee, and the Individual Defendants were, in fact, operating as brokers. As this Court previously explained in its Opinion denying defendants' motion to dismiss:

> To determine whether a person is considered a broker, courts consider a variety of factors, including whether the person: (1) actively solicited investors; (2) receives transaction-based compensation; (3) handles securities or funds of others in connection with securities transactions; (4) processes documents related to the sale of securities; (5) participates in the order-taking and order-routing process; (6) sells, or previously sold, securities of other issuers; (7) is an employee of the issuer; (8) is involved in negotiations between the issuer and investor; and/or (9) makes valuations as to the merits of the investment or gives advice.

4/28/23 Op. and Order, at 5 (citing SEC v. Hansen, No. 83 Civ. 3692, 1984 WL 2413, at *10 (S.D.N.Y. Apr. 6, 1984); SEC v. Battoo, 158 F. Supp. 3d 676, 695 & n.15 (N.D. Il. 2016); SEC v. Art Intellect, Inc., No. 2:11-CV-357, 2013 WL 840048, at *20 (D. Utah Mar. 6, 2013)). Courts will also "consider whether the individual may be characterized by a certain regularity of participation in securities transactions at key points in the chain of distribution." SEC v. Martino, 255 F. Supp. 2d 268, 283 (S.D.N.Y. 2003). Although the Court may grant summary judgment without all the broker-indicative factors being present, see SEC v. CKB168 Holdings, Ltd., 210 F. Supp. 3d 421, 453 (E.D.N.Y. 2016), the determination of whether an individual or entity is a broker "is . . . a fact-specific inquiry," Devan v. Gordian Grp. LLC, No. 16-CV-1694, 2017 WL 819494, at *10 (S.D.N.Y. Feb. 28, 2017). See also

Rhee v. SHVMS, LLC, No. 21-cv-4283, 2023 WL 3319532, at *8 (S.D.N.Y. May 8, 2023).

The SEC argues that the undisputed facts establish that defendants operated as brokers and thus violated Section 15(a). For the reasons discussed below, the Court finds that there remain genuine disputes of material fact regarding whether defendants were brokers and accordingly summary judgment on the SEC's claim under Section 15(a) must be denied.

### 1. GEL

The SEC first contends that the undisputed facts establish that GEL operated as a broker because the undisputed facts establish some (but not all) of the broker indicative factors and show that GEL regularly participated in securities transactions at key points in the chain of distribution. Before turning to whether defendants have raised a genuine dispute of material fact with respect to GEL's regularity of participation and the broker indicative factors that the SEC contends have been established, the Court will address defendants' threshold objection that the Court categorically may not enter summary judgment because the SEC has failed to establish that all the broker indicative factors are present.

Here, the SEC contends that seven of the nine broker indicative factors are present: (1) solicitation of business; (2) receipt of transaction-based compensation; (3) "handl[ing]

securities [and] funds of others in connection with securities transactions"; (4) "particip[ation] in the order-taking and order-routing process"; (5) "process[ing] [of] documents related to the sale of securities"; (6) effectuation of sales for multiple issuers; and (7) lack of employment by the issuers. See 4/28/23 Op. and Order, at 5.² However, it is undisputed that two of the broker indicative factors are absent in this case. The SEC has put forward no evidence that GEL was "involved in negotiations between the issuer and investor" and concedes that GEL never gave merits-based valuations or advice. See id.; Pl. Resp. to Defs. 56.1 Counterstatement, ¶¶ 23, 59, 61, ECF No. 60.

Nevertheless, contrary to defendants' position, this does not automatically mean the Court must deny summary judgment. Not all of the broker indicative factors will be relevant in every case because the meaning of "effecting transactions in securities" varies by context, see 15 U.S.C. § 78c(a)(4)(A); thus, the SEC need not establish every broker indicative factor to prevail on summary judgment, see, e.g., SEC v. Collyard, 154 F. Supp. 3d 781, 789 (D. Minn. 2015) ("Most courts do not require the SEC to establish each of the various cited factors in order to prevail on

---

² The Court notes that defendants' opposition relies upon a slightly different list of broker-indicative factors. See Defs. Mem. in Opp'n to Mot. for Summ. J. ("Defs. Opp'n to Summ. J."), at 20-22, ECF No. 55. The Court, however, will only discuss those factors it previously listed in its motion-to-dismiss opinion.

summary judgment, but rather determine that some combination of factors establishes that the defendants acted as a broker."), vacated in part on other grounds, 861 F.3d 760 (8th Cir. 2017); CKB168 Holdings, Ltd., 210 F. Supp. 3d at 453 (same). Accordingly, the Court will only deny summary judgment if defendants have raised genuine disputes of material fact with respect to a sufficient number of the broker indicative factors that are relevant to this case.

a. Relevant Broker Indicative Factors

Turning, however, to the seven broker indicative factors that the SEC itself contends are relevant here, the Court finds that defendants have raised genuine disputes of material fact regarding a sufficient number of these factors to preclude granting summary judgment to the SEC on this basis. Specifically, defendants have, at the very least, raised genuine disputes of material fact as to three of the broker indicative factors that the SEC argues are relevant and established by the undisputed facts: (1) transaction-based compensation; (2) solicitation; and (3) order-routing and order-processing.

The Court starts with transaction-based compensation. The SEC contends there are two types of transaction-based compensation that GEL received: (1) a "transaction-based fee for each deposit of securities the customer made into a GEL-controlled custodian account," where the amount varied based upon "the type of security

deposited and the extent of the legal review involved" and included a "markup on legal fees for GEL's benefit"; and (2) "a $30 transaction-based trade settlement fee each time it completed a trade on behalf of a customer" with "a markup . . . for GEL's benefit." Pl. Statement, ¶¶ 67-69. The Court concludes that the SEC has failed to establish beyond genuine dispute that these are transaction-based compensations to GEL.

Turning first to the fees charged on deposits, the SEC's evidence indicates that GEL charged a $1,100 or $2,500 deposit fee depending on the type of deposit, which reflect "legal review fee[s] for [defendants'] third-party lawyers, Lucosky Brookman, to review the client's deposit packages." See Declaration of Carol Stumbaugh ("Stumbaugh Decl."), Ex. 31, at 75:8-22, ECF No. 45-31; Stumbaugh Decl., Ex. 23, ECF No. 45-23; Stumbaugh Decl., Ex. 29, at 87:4-88:4, 90:5-22, ECF No. 45-29. The SEC argues that, in fact, the $1,100 deposit fee includes a mark-up on the legal services for GEL's benefit, as the engagement letter with GEL's third-party lawyers reflects only a $550 legal fee per deposit. Stumbaugh Decl., Ex. 29, at 88:5-89:10; Stumbaugh Decl., Ex. 24, at APP157, ECF No. 45-24. However, defendants dispute that the alleged "mark-up" on legal fees is, in practice, compensation to GEL. Defendants argue that the deposit fees also pay for another monthly legal fee included in the engagement letter with their lawyers. Stumbaugh

Decl., Ex. 24, at APP157 (reflecting a monthly $5,000 fee); Defs.
Resp. Statement, ¶ 68.

"[R]esolv[ing] all ambiguities and draw[ing] all permissible
factual inferences in favor of" defendants, as the Court must on
summary judgment, a reasonable juror could conclude that the
deposit fees (which reflect charges for the provision of legal
services) are not transaction-based compensation to GEL related to
securities transaction. See Frost, 980 F.3d at 242. For starters,
GEL has raised a genuine dispute as to the proper interpretation
of the disparity between the $550 deposit fee their lawyers charge
and the higher deposit fees that defendants charge their customers.
The SEC is drawing an inference that this is a markup for GEL's
benefit, but given the other legal fees GEL's lawyers charge (as
laid out in the engagement letter), a reasonable jury could draw
an opposite inference. Additionally, a reasonable jury could
conclude that a deposit fee that reflects charges for legal review
is sufficiently removed from an actual securities transaction that
it should not be considered transaction-based compensation
deriving from a securities transaction.[3] As defendants correctly

---

[3] The Court also notes that defendants have put forward evidence
that the vast majority of their income was derived from a $2,500
monthly maintenance fee, which GEL contends is subscription-based.
See Defs. Resp. Statement, ¶¶ 66-67; Declaration of Jonathan
Uretsky ("Uretsky Decl."), Ex. JJJ, at 138:21-139:4, ECF No. 57-
60; Uretsky Decl., Ex. HHHH, at 76:9-13, ECF No. 57-84 ("Q: So let
me ask you another way. If a client would have opened an account
with GEL and done let's just say no business for the year. They

contend, legal review of securities is not necessarily reflective of a securities transaction that involves broker-like behavior. See Defs. Opp'n to Summ. J., at 18.

Now turning to the $30 trade-settlement fee, defendants have raised a genuine dispute of material fact as to whether this is transaction-based compensation that defendants received. The SEC contends the evidence shows that "GEL charged a $30 transaction-based settlement fee each time it completed a trade on behalf of a customer," with "a markup . . . for GEL's benefit." Pl. Statement, ¶ 69. See Stumbaugh Decl., Ex. 23, at APP156 (listing a $30 "Trade Settlement Fee"); Stumbaugh Decl., Ex. 26, at APP167, ECF No. 45-26 (listing a "Security Processing and Settlement Fee" of $15); Stumbaugh Decl., Ex. 32, at 39:2-12, ECF No. 45-32. Defendants, however, have offered evidence that the $30 fee was a "pass-through expense[] for fees charged on a transaction basis by the banks" that was ultimately paid to the banks. Defs. Resp. Statement, ¶¶ 66-67; Uretsky Decl., Ex. EEE, ¶¶ 8-9, ECF No. 57-55. The SEC attempts to make this genuine factual dispute disappear

---

still would have been required to pay the $30,000 annual fee? A: Yes."). Although this does not directly rebut the SEC's position that the deposit-based fees are transaction-based compensation, it does provide more evidence from which a reasonable jury could conclude that GEL's fees for depositing the securities are removed from any actual securities transactions. This is because a jury could interpret the depositing of securities as related to the storage services that GEL charges after legal review of the securities is conducted, which do not necessarily relate to a securities transaction.

by arguing that even if that is accepted as true, "the fee was .
. . compensation to GEL in the first instance." Pl. Reply in Supp.
of Mot. for Partial Summ. J., at 4, ECF No. 59.[4] However, a
reasonable jury could draw the opposite inference: that if the $30
was ultimately a pass-through expense to compensate the banks,
then GEL, itself, was not earning any transaction-based
compensation. In sum, the Court finds there are genuine disputes
of material fact about whether GEL received transaction-based
compensation.

---

[4] The SEC is also correct that defendants admitted in their answer
that they received some transaction-based compensation. See
Answer, ¶ 50, ECF No. 36. However, the allegation to which
defendants admitted does not indicate it was transaction-based
compensation that was ultimately for GEL's benefit. This is
supported by the fact that the only fee the answer specifically
admits that GEL receives is $30 settlement fee. See Answer, ¶¶ 50-
55; Compl., ¶¶ 50-55. Although the $30 fee is transaction-based
compensation that GEL receives in the first instance, it is not
clear, for the reasons explained above, if it is transaction-based
compensation for GEL's benefit (rather than a pass-through expense
ultimately paid to the banks). Accordingly, the admission does not
get the SEC as far as the SEC contends. Furthermore, even assuming
arguendo the admission were as clear as the SEC contends, the SEC
has pointed to no authority that the admission in defendants'
answer is binding on summary judgment. Here, facts presented to
the Court on summary judgment reveal there is a genuine dispute of
material fact about whether (and to what extent) GEL received
transaction-based compensation. Additionally, the SEC would not be
prejudiced by having to prove transaction-based compensation, as
the SEC has gathered and put forward evidence to support its
position that GEL received such compensation. Given the absence of
prejudice to the SEC and the fact that the fully developed factual
record reveals a genuine dispute of material fact, the Court would
not, in any event, treat the defendants' admission in their answer
as binding or definitive on summary judgment.

The Court now addresses the next broker-indicative factor that has not been established beyond dispute: solicitation of business. The SEC's frontline position is that the undisputed facts establish that GEL actively solicited business. The SEC argues this is so because defendants reached out to old customers (from prior ventures) and maintained a website advertising their services. See Pl. Statement, ¶¶ 7-8. However, defendants have raised a genuine dispute as to whether defendants ever reached out to their old customers. Defs. Resp. Statement, ¶ 7; Defs. 56.1 Counterstatement of Fact ("Defs. 56.1 Counterstatement"), ¶ 7, ECF No. 54.[5] Accordingly, the undisputed facts do not establish that GEL actively solicited customers.

Likely realizing it will be unable to establish active solicitation beyond dispute, the SEC falls back on a secondary position that rests on GEL's reliance on referred business. It is undisputed that the vast majority of defendants' customers were referred, and defendants would "often turn down" individuals that "called asking to become a customer" if that individual did not

---

[5] Defendants also attempted to dispute that they ever had a public website. However, the submitted declaration upon which defendants rely for this point appears to recount inadmissible hearsay from a GoDaddy representative to show the website was never live. Uretsky Decl., Ex. P, ECF No. 57-14; Defs. 56.1 Counterstatement, ¶ 9; Pl. Statement, ¶ 8; Defs. Resp. Statement, ¶ 8. That is insufficient to create a genuine dispute of material fact on this particular factual issue. See Pettus v. City of New York, 10-CV-1442, 2011 WL 4458901, at *6 (E.D.N.Y. Aug. 23, 2011).

"hav[e] a referral source." Defs. 56.1 Counterstatement, ¶¶ 7-8; Pl. Resp. to Defs. 56.1 Counterstatement, ¶¶ 7-8. The SEC contends, however, that even if most of GEL business is found through referrals, GEL still solicited business because: "GEL held itself out as a firm that could facilitate securities transactions -- i.e., provide customers a way to deposit, custody, and sell hard-to-trade penny stocks" and GEL pursued referrals to obtain customers. Pl. Mem. of Law in Supp. of Mot. for Partial Summ. J. ("Pl. Opening Summ. J. Mem."), at 18-19, ECF No. 43. See Pl. Statement, ¶¶ 4-7; Stumbaugh Decl., Ex. 27, ECF No. 45-27. What the SEC overlooks, however, is that a reasonable jury could find that simply holding oneself out as capable of providing a service and contacting referred clients is not sufficient to establish solicitation of business. Cf. Martino, 255 F. Supp. 2d at 284 (finding active solicitation of investors based on evidence that defendant took steps to pre-sell stock and sent out press releases and filings to potential investors). In sum, the Court concludes that the SEC has not established beyond dispute that GEL solicited business.

The Court now turns to the third and final broker-indicative factor that it finds defendants have genuinely disputed: GEL's participation in the order-taking and order-routing process. The SEC argues that the undisputed facts show that GEL participated in the order-taking and order-routing process because: (1) the

Account Application that customers signed gave GEL authorization to "accept trades" from authorized agents, and (2) customers gave trade orders to GEL's authorized traders, which GEL then sent to executing brokers with instructions on the trade terms. Pl. Statement, ¶¶ 11, 26-32, 35-42. However, defendants have raised factual disputes as to key aspects of GEL's alleged participation in the order-taking and order-routing process.

First, defendants have raised a dispute about the scope of the authority granted to GEL regarding the acceptance of trades. The terms of the Account Application, upon which the SEC relies, only gave GEL authority to accept trade instructions from customers' authorized agents but granted no independent trading authority to GEL. See Stumbaugh Decl., Ex. 8, at APP089, ECF No. 45-8. Accordingly, defendants assert, based on the Account Application and other documentary evidence, that it cannot accept trades but instead can solely relay customer instructions that it is provided (although GEL does not dispute that it did indeed relay those customer instructions to executing brokers). See Def. Resp. Statement, ¶¶ 11, 26, 36-38, 42. Second, defendants have raised a dispute as to whether it had any authorized traders, as there is testimony indicating that the document notating certain GEL employees as "authorized traders" was done by mistake and instead it should have said "authorized users." Def. Resp. Statement, ¶ 28; Uretsky Decl., Ex. WW, ECF No. 57-47. Based on the evidence that

16

GEL has put forward, a reasonable jury might conclude that GEL does not have authority to accept trades but only has authority to convey trade order instructions to executing brokers. That would undermine a key aspect of how the SEC contends GEL participated in the order-taking and order-routing process. Accordingly, the Court concludes that the SEC has failed to establish, beyond dispute, how exactly GEL participated in the order-routing and order-taking process, which precludes the Court from finding that the SEC has definitively established this broker-indicative factor.

In sum, the SEC has failed to establish beyond dispute the presence of at least three of the seven broker indicative factors that it contends are relevant to this case. Even assuming arguendo that the SEC has established beyond dispute the other four factors it contends are relevant, those factors, standing alone, are insufficient to show as a matter of law that GEL operated as a broker, given the importance of the three disputed factors (order-taking and order routing; transaction-based compensation; and solicitation). The Court accordingly concludes it cannot grant summary judgment to the SEC based on the broker-indicative factors.

b. Regularity of Participation

The SEC presents what it believes to be an alternate basis upon which the Court could grant summary judgment on the Section 15(a) claim: GEL's regular participation at key points in the chain of distribution of securities transactions. The SEC argues that it

has established beyond dispute that GEL participated in securities transactions at key points in the chain of distribution and that on this ground alone, the Court may grant it summary judgment. The Court disagrees. First, defendants have raised genuine disputes of material fact regarding the nature of GEL's participation at key distribution points, which precludes summary judgment on this basis. Second, even if the SEC established beyond dispute the regularity of GEL's participation at key distribution points, there is no legal support for the SEC's position that this would be a sufficient basis, standing alone, upon which the Court could grant summary judgment, especially when there are genuine disputes of material fact about highly relevant broker-indicative factors.

The Court starts with the SEC's argument that the undisputed facts establish that GEL was regularly involved at key points in the chain of distribution. The SEC contends that GEL regularly participated at six distribution points: (1) taking custody and control of the securities in GEL accounts; (2) taking trade orders from customers; (3) finding executing brokers and then sending their customers' requested trades to executing brokers; (4) providing instructions regarding the trades to executing brokers; (5) settling the trades; and (6) disbursing trade proceeds. The Court agrees that the undisputed facts establish that GEL carried out its business activities regularly: GEL was involved in 19,000 trades, involving 300 billion shares from 400 different issuers,

that generated $1.2 billion in proceeds on behalf of 60 customers. See Pl. Statement, ¶¶ 56-57; Defs. Resp. Statement, ¶¶ 56-57. However, there are genuine disputes of material fact as to the nature of GEL's participation at different points in the chain of distribution.

Starting with the first distribution point, defendants have raised a genuine dispute of material fact as to the nature of GEL's control over the securities and the structure of the custodial accounts. The SEC contends that the undisputed facts establish that GEL created and exercised control over custodial accounts, in its name, at financial institutions, for the purpose of holding customer securities, and once customers transferred their stocks to the custodial accounts, the stocks were commingled and held under GEL's name and control. Pl. Statement, ¶¶ 19-21, 23.[6] Defendants, however, have raised factual disputes that undermine the SEC's position. First, defendants have raised a dispute as to how the custodial accounts were structured. Although defendants do not dispute that the accounts were in GEL's name, defendants have offered evidence indicating that each customer had his or her own account and was the beneficial owner of that account, which would also mean that the customers' shares were not commingled. Defs.

---

[6] The parties do not dispute that GEL employed a law firm to conduct a review of the shares that GEL's customers deposited. Pl. Statement, ¶ 22; Defs. Resp. Statement, ¶ 22.

Resp. Statement, ¶¶ 19, 21, 23; Uretsky Decl., Ex. HH, ECF No. 57-32; Uretsky Decl., Ex. GG, ECF No. 57-31; Uretsky Decl., Ex. F, ECF No. 57-4. Additionally, defendants have raised a genuine dispute as to the exact nature of GEL's control over the securities. Defendants contend that GEL exercised only nominal control, as it was the customers who gave GEL directions, which GEL then followed, regarding what should happen with their securities. Defs. Resp. Statement, ¶ 20. The SEC has thus failed to establish the nature of GEL's participation at the first key distribution point beyond dispute.

The Court now turns to the second, third, and fourth distribution points, which all center on GEL's involvement with the executing brokers. The nature of GEL's participation is largely undisputed; however, that undisputed evidence is subject to competing interpretations. Additionally, defendants have raised a genuine dispute of material fact as to their role in finding executing brokers and whether they had any authorized traders in-house, which the SEC posited were part and parcel of GEL's involvement with executing brokers.

The following is undisputed but subject to competing interpretations. First, GEL opened accounts with those executing brokers, in its name, for purposes of trading the customers' stock. Pl. Statement, ¶ 27; Defs. Statement, ¶ 27. Second, customers gave trade order instructions to GEL, which GEL relayed to executing

brokers. Third, the executing brokers executed trades based on the customers' instructions that they received from GEL. Pl. Statement, ¶¶ 26, 29, 35-38, 42; Defs. Resp. Statement, ¶¶ 26, 29, 35-38, 42.[7] However, defendants dispute the SEC's characterization that this shows GEL took and accepted trade orders. The Court agrees that a reasonable jury would not be required to accept the SEC's interpretation of this evidence (that GEL took trade orders). Instead, a reasonable jury could agree with defendants that this does not indicate that GEL itself accepted trade orders, rather than simply receiving and then relaying customers' trade instructions to executing brokers. Accordingly, although these facts are undisputed, the inferences that a jury could draw from these facts are subject to reasonable debate.

Furthermore, the SEC did not stop at just these undisputed facts to illustrate the nature of GEL's involvement with the executing brokers. The SEC took it a step further to argue that GEL found executing brokers and had its own authorized traders; however, in taking it a step further, the SEC relies on facts that are subject to genuine dispute. First, although the SEC posits that the undisputed facts establish that GEL had authorized

---

[7] The parties also dispute whether GEL exercised discretion when providing instructions regarding the trades. See Pl. Statement, ¶¶ 40-41; Defs. Resp. Statement, ¶¶ 40-42. However, discretion is not required for finding that an entity undertook brokerage activities. Thus, the dispute over this issue is immaterial.

traders, GEL, for the reasons explained above, has raised a genuine dispute of material fact as to whether GEL, in fact, had authorized traders. See Pl. Statement, ¶¶ 28-30; Defs. Resp. Statement, ¶¶ 26, 28-30. Second, although the SEC contends that GEL found executing brokers for its clients, defendants have raised a genuine dispute about how actively GEL sought out executing brokers on behalf of their customers, as there is evidence that most executing brokers sought out GEL or were selected by GEL's customers. Pl. Statement, ¶¶ 31-32, 34; Defs. Resp. Statement, ¶¶ 31-32, 34; Uretsky Decl., Ex. YY, ECF No. 57-49. Accordingly, defendants have raised genuine disputes of material fact as to the nature of GEL's participation in the second, third, and fourth distribution points.

Turning to the fifth and sixth distribution points, it is true that defendants have failed to raise a genuine dispute of material fact as to GEL's involvement with the settlement process. The SEC is correct that it is largely undisputed that GEL settled trades in GEL accounts by "direct[ing] the transfer of the customer's securities out of the GEL custodian account," having the proceeds put into the custodian accounts, transferring the proceeds to the customer's subaccount, and then wiring the proceeds to customers upon their request. Pl. Statement, ¶¶ 46-50, 52-53. The only disputes GEL successfully raises (with respect to how the proceeds were held and the level of GEL's control) are largely

tangential. Furthermore, GEL has failed to provide sufficient factual support for its assertion that the banks, rather than GEL, handled the settling, allocating, and wiring of the proceeds, because the provided evidence does not rule out that GEL was also involved. Def. Resp. Statement, ¶¶ 46-50, 52-53; Defs. 56.1 Counterstatement, ¶ 31.

In sum, the Court concludes that defendants have raised a sufficient number of genuine disputes of material fact about the nature of GEL's participation such that the SEC cannot show this element is established beyond dispute. Although defendants have failed to raise genuine disputes of material fact about all aspects of GEL's participation at these six distribution points, GEL has raised genuine disputes of material fact and proffered competing interpretations that call into question how exactly GEL participated at four of the six distribution points. That is enough to raise a genuine dispute on this element because the specifics of how GEL participated are key for assessing whether GEL operated as a broker. The Court cannot find an element is undisputed when so many of the specifics underlying that element are subject to reasonable dispute.

Furthermore, even if one were to assume arguendo that the undisputed facts had established the nature and extent of GEL's participation at all six distribution points in a securities transaction, this would be an insufficient basis upon which to

grant summary judgment. While it is true that regular participation at key distribution points in a securities transaction is an indicia of broker activity, the SEC has conceded that it is unaware of any "summary judgment decision where a Court has just based the decision on [this] factor alone without also looking at other factors." 8/11/23 Tr. at 21:1-10. See <u>Martino</u>, 255 F. Supp. 2d at 283; <u>Hansen</u>, 1984 WL 2413, at *10; <u>Rhee</u>, 2023 WL 3319532, at *8. Especially in light of the fact that defendants have raised a genuine dispute of material fact as to three of the seven applicable broker-indicative factors, the Court rejects the SEC's position that the Court may grant summary judgment based solely on the regularity of GEL's participation at key points in the chain of distribution in a securities transaction.

Because defendants have thus raised genuine disputes of material fact both as to the nature of GEL's participation in securities transactions and as to three, key broker-indicative factors, the Court denies summary judgment to the SEC on its Section 15(a) claim against GEL.[8]

---

[8] Because the Court finds there are genuine disputes of material fact on the SEC's prima facie case that GEL operated as a broker and thus violated Section 15(a), the Court need not reach defendants' arguments that there are genuine disputes of material fact as to whether GEL performs purely clerical and ministerial services and/or functions as a finder, which could also, in theory, preclude granting summary judgment to the SEC.

2. <u>GEL Trustee and the Individual Defendants</u>

The SEC also argues that it is entitled to summary judgment on its Section 15(a) claim against GEL Trustee and the Individual Defendants. To substantiate its position that the undisputed facts establish that the GEL Trustee is a broker, the SEC contends that the GEL Trustee's conduct is essentially the same as GEL's conduct, because GEL Trustee managed GEL's business and received the net profits from GEL. <u>See</u> Pl. Statement, ¶¶ 3, 61-62, 73-74. Although defendants do not dispute that GEL and GEL Trustee engaged in effectively the same conduct, <u>see</u> Def. Statement, ¶¶ 3, 61-62, 73-74, the genuine disputes of material fact that precluded granting summary judgment on the Section 15(a) claim against GEL also preclude granting summary judgment on the Section 15(a) claim against GEL Trustee based on the same conduct. Accordingly, the SEC's motion for summary judgment on its Section 15(a) claim against GEL Trustee is denied.

Similarly, the SEC contends that it is entitled to summary judgment against the Individual Defendants "based on the same conduct" that made GEL a broker, as the Individual Defendants "directly participated in" some of GEL's "brokerage services." Pl. Opening Summ. J. Mem., at 19. However, defendants have raised a genuine dispute of material fact about whether GEL operated as a broker, which necessarily raises genuine disputes of material fact about whether the Individual Defendants (who were involved in some

of GEL's services) were also brokers. Accordingly, the Court concludes the SEC is not entitled to summary judgment on its Section 15(a) claim against the Individual Defendants.

In sum, because the SEC has raised genuine disputes of material fact as to whether GEL operated as a broker, the SEC is not entitled to summary judgment on its Section 15(a) claims against GEL, GEL Trustee, or the Individual Defendants.

### iii.  Section 20(a) of the Exchange Act

The Court finally turns to the SEC's Section 20(a) claim against the Individual Defendants. The SEC contends it is entitled to summary judgment on its Section 20(a) claim against the Individual Defendants for GEL and GEL Trustee's primary violations of Section 15(a). To show control person liability when the primary violation is of Section 15(a), the SEC must show, "(1) a primary violation by a controlled person and (2) direct or indirect control of the primary violator by the defendant." SEC v. GPL Ventures LLC, 21 Civ. 6814, 2022 WL 158885, at *7 (S.D.N.Y. Jan. 18, 2022). Because defendants have raised a genuine dispute of material fact as to whether GEL and GEL Trustee violated Section 15(a) and thus committed a primary violation, the SEC is not entitled to summary judgment on its Section 20(a) claim against the Individual Defendants. The SEC's motion for summary judgment on the Section 20(a) claim is accordingly denied.

B. Exclusion of Defendants' Expert Testimony

Since the SEC is not entitled to summary judgment on its claims against defendants, the Court will now address the SEC's motion to exclude the expert report and testimony of Mr. Holik. For the reasons explained below, the Court concludes that each of the expert opinions that Mr. Holik seeks to offer are improper and thus excludes Mr. Holik's report and testimony in its entirety.

Mr. Holik first seeks to offer thinly-disguised legal opinions and conclusions with respect to the applicable legal standard and how it should be applied in this case. Specifically, Mr. Holik claims to have determined as an expert that: (1) GEL does not "engage[] in many of the traditional hallmark activities of 'brokerage' business" as defined by the multi-factored legal test that courts employ; (2) GEL is not a broker and instead performs purely ministerial and clerical functions; and (3) "[t]he SEC [o]verplays the [i]mportance of [t]ransaction-[b]ased [c]ompensation." See Declaration of Keefe Bernstein ("Bernstein Decl."), Ex. A, at 9-13, ECF No. 52-1. See also Bernstein Decl., Ex. B, at 5-7, ECF No. 52-2; Bernstein Decl., Ex. C, at 25:2-7, ECF No. 52-3 ("Q: . . . So when you spoke to Mr. Uretsky at the inception of your engagement, what did defense counsel ask you to do? A: To consider giving an opinion on whether GEL was operating and acting in a capacity that would require registration with the

SEC as a broker."). The SEC argues that these opinions should be excluded as inadmissible legal conclusions. The Court agrees.

It is impermissible for experts to testify to legal conclusions. See United States v. Bilzerian, 926 F.2d 1285, 1294 (2d Cir. 1991) ("As a general rule an expert's testimony on issues of law is inadmissible"); Marx & Co., Inc. v. Diners' Club Inc., 550 F.2d 505, 509-10 (2d Cir. 1977) ("It is not for witnesses to instruct the jury as to applicable principles of law, but for the judge."). Here, the SEC correctly contends that Mr. Holik is seeking to offer impermissible legal opinions about what constitutes a broker under applicable law and how the multi-factored balancing test should be applied in this case. That type of legal opinion is not only inadmissible because it "encroach[es] upon the court's duty to instruct on the law," Bilzerian, 926 F.2d at 1294, but it is also completely unhelpful to the jury because Mr. Holik is "attempt[ing] to substitute [his own] judgment" about what the final outcome in this case should be "for the jury's," United States v. Duncan, 42 F.3d 97, 101 (2d Cir. 1994).

Defendants' attempts to recast Mr. Holik's report as a fact-based analysis, grounded in part on "how defendants' practices deviated from the norms in the securities industry," fly in the face of what Mr. Holik's expert report actually says. See Defs. Mem. in Opp'n to Pl. Mot. to Exclude Defs. Expert ("Defs. Opp'n to Mot. to Exclude Defs. Expert"), at 6-8, ECF No. 56. Case in point:

Mr. Holik concludes in his expert report that GEL should not be considered a broker under the prevailing legal standard. <u>See</u> Bernstein Decl., Ex. A, at 9-11, 13; Bernstein Decl., Ex. B, at 5-7 ("The relief sought in the complaint should be denied."). That is a textbook legal conclusion. Defendants' argument is thus nothing more than a disingenuous attempt to couch in factual terms what is plainly "testimony encompassing an ultimate legal conclusion based upon the facts of the case," which "is not admissible" even if "presented in terms of industry practice." <u>Bilzerian</u>, 926 F.2d at 1295. Accordingly, Mr. Holik's opinions in Sections V.B[9] and V.E of his initial expert report and Sections I.C and I.E. of his supplemental report must be excluded.

Next, Mr. Holik seeks to offer opinions about whether the banks and executing brokers involved in the relevant transactions are regulated. Specifically, Mr. Holik first opines that "all of the custodial activities involving investor securities and sale proceeds are conducted in accounts at banks which are subject to supervision by federal [and state] bank regulators" and that "[t]he

---

[9] Mr. Holik offers two subsidiary opinions in this section of his report: (1) the SEC has never asserted jurisdiction over a firm like GEL before and (2) it is doing so "because [GEL] assists investors in transacting lawful securities business that regulators wish would cease to exist." <u>See</u> Bernstein Decl., Ex. A, at 9-10. Those opinions are irrelevant and thus inadmissible. The novelty or motivations behind the SEC's assertion of jurisdiction in this case has no bearing whatsoever on whether defendants operated as brokers and thus needed to register under Section 15(a).

SEC does not have jurisdiction over th[o]se [custodian] accounts." Bernstein Decl., Ex. A, at 11; Bernstein Decl., Ex. B., at 6. Mr. Holik then opines that "[t]he record reflects that the securities sales referenced in the Complaint take place at SEC-registered broker-dealers," who "are fully subject to the authority of the SEC and FINRA." Bernstein Decl., Ex. A, at 12. The SEC argues these opinions are also improper. The Court once again agrees.

The Court starts with Mr. Holik's opinion that the banks are subject to the jurisdiction of federal and state banking regulators, rather than SEC. That opinion is not only an improper legal opinion (as a conclusion regarding an agency's jurisdiction is plainly legal in nature), but also completely irrelevant. Defendants appear to be operating under the misconception that if the "transactions at issue were properly regulated" by federal and state oversight of the banks, then ipso facto GEL will escape liability under Section 15(a). Defs. Opp'n to Mot. to Exclude Defs. Expert, at 13. That is wrong. Whether or not the federal and state bank regulators (rather than the SEC) have jurisdiction over the banks where the custodian accounts are kept has no bearing on whether GEL functioned as a broker and is thus subject to prosecution by the SEC under Section 15(a). Cf. SEC v. Glob. Inv. Strategy UK Ltd., 20 Civ. 10838, 2021 WL 4896127, at *5 (S.D.N.Y. Oct. 19, 2021) ("That the FRB has authority to regulate lending does not restrict the SEC's statutory authority to regulate broker-

dealers, simply because broker-dealers engage in lending activities subject to regulation by the FRB."). Accordingly, Mr. Holik's opinions in Sections V.C. of his initial expert report and Section I.D. of his supplemental report must be excluded.

The Court now turns to Mr. Holik's opinion that the executing-brokers involved in the transactions must be registered and are subject to SEC and FINRA oversight. The Court concludes that this opinion is similarly of no probative value to resolving the sole issue in this case: whether defendants operated as brokers. Mr. Holik effectively conceded at his deposition that this opinion is completely irrelevant, as he admitted that there is <u>no</u> "exception to registration that applies based on the fact that another broker involved in the securities transaction is already registered." Bernstein Decl., Ex. C, at 108:22-25. Thus, if GEL acted as a broker in the transactions, GEL must register with the SEC, regardless of whether the executing brokers (who were also involved in the transactions) were registered. Furthermore, the Court rejects defendants' frivolous argument that this opinion is relevant because the activities the SEC accuses GEL of doing were actually done by licensed executing brokers. <u>See</u> Defs. Opp'n to Mot. to Exclude Defs. Expert, at 14. If GEL did not undertake the purported broker activities that the SEC alleges it did, then GEL would not be liable, regardless of whether the licensed executing brokers actually performed those activities in the relevant

transactions. Accordingly, Mr. Holik's opinion in Section V.D his initial expert report must be excluded.

Finally, Mr. Holik seeks to offer a hodge-podge of opinions reflecting Mr. Holik's conviction that there is no policy reason that defendants should have to register as brokers. First, Mr. Holik concludes, "[t]here is no need for the SEC to require registration of GEL to fulfill any market or investor protection purpose." Bernstein Decl., Ex. A, at 13. See also Bernstein Decl., Ex. B, at 7 ("I see no public interest or investor protection purpose for compelling GEL to register as a broker under federal securities law."). Defendants have now rightfully conceded that these opinions are improper. See 8/11/23 Tr. at 5:9-18 ("I wouldn't even be averse to your Honor striking that portion of the report that goes to the public interest."). Whether or not registration would serve what in Mr. Holik's view is the statutory purpose of Section 15(a) is beside the point. Statutory purpose is not one of the relevant factors that the jury will be considering in deciding whether GEL operated as a broker under the facts and circumstances of this case. This opinion is thus inadmissible and must be excluded.

In this same vein, Mr. Holik opines that he "saw no evidence that any investor was ever confused or mislead," that he was "not aware [of] any investor, bank, or broker-dealer complain[ing] about GEL's services," and that "[n]o investor here has been hurt."

Bernstein Decl., Ex. A, at 11, 13. See also Bernstein Decl., Ex. B, at 7 ("No investor has complained or been hurt"). But consumer harm or confusion is not an element of a Section 15(a) claim.[10] Cf. SEC v. Merch. Cap., LLC, 311 F. App'x 250, 252 (11th Cir. 2009) (violations of Section 15(a) "are strict-liability violations"). Furthermore, Mr. Holik's himself only thought these opinions were relevant "to the . . . question of whether there is a need for regulation," Bernstein Decl., Ex. C, at 88:13-17, 89:5-12, which is not the question the jury is tasked with deciding. Thus, any testimony on the lack of consumer harm and confusion is not only irrelevant but will likely only serve to confuse the jury. This opinion must therefore be similarly excluded.

In conclusion, each and every one of the opinions that Mr. Holik seeks to offer are improper. Because all the analysis in Mr. Holik's report is inextricably intertwined with these inadmissible opinions, the Court hereby excludes Mr. Holik's expert report and testimony in its entirety. Cf. in re Pfizer Inc. Sec. Litig., 819

---

[10] Defendants seem to believe the SEC is alleging that there was consumer confusion because the SEC has asserted, in its 56.1 Statement, that some consumers "provided written resolutions to GEL stating that they were opening a brokerage account at GEL." Pl. Statement, ¶ 14. But the SEC is not alleging there was consumer confusion. See Pl. Reply in Supp. of Mot. to Exclude Defs. Expert, at 5, ECF No. 62. Instead, the SEC's theory is that GEL, in fact, was operating as a broker, and the fact that some customers may have believed they were opening a brokerage account with GEL supports that theory. Defendants' argument that the SEC's own theory rests on consumer confusion is thus without basis.

F.3d 642, 665 (2d Cir. 2016) ("Of course, district courts are 'not obligated to prune away all of the problematic' elements of an expert's proposed testimony 'to save the remaining portions, however small.'" (quoting <u>Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC</u>, 752 F.3d 82, 96 (1st Cir. 2014)).

III. <u>Conclusion</u>

For the foregoing reasons, the Court denies summary judgment to the SEC but grants the SEC's motion to exclude the expert report and testimony of Mr. Holik.

SO ORDERED.

Dated:    New York, NY

March **31**, 2024                    JED S. RAKOFF, U.S.D.J.